# SUPREME COURT.

## ABRAHAM COVERT agt. MULFORD GRAY.

In an action on the case, to recover damages for the act of the defendant in enticing the plaintiff's son away from the service of the plaintiff, without the knowledge or consent of the latter, and inducing him to enlist in the army for three years, as a substitute for the defendant, who had been drafted for such service, the rule of damages is, that the plaintiff can only recover for the loss of service up *to the time of the commencement of the action,* or at most, *to the time of the trial.*

In such an action, the law does not allow *punitive or exemplary damages.* The foundation of the action is the *loss of service,* and the recovery should be the damage sustained. (BALCOM, J., *dissenting on both points. See his opinion.*)

*Broome General Term.   Argued July Term,* 1865; *decided January Term,* 1866.

PARKER, MASON *and* BALCOM, *Justices.*

THIS was an action to recover damages for the act of the defendant in enticing the plaintiff's son, Nathaniel, away from the service of the plaintiff, and inducing him to go into the army of the United States for the term of three years, as a substitute for the defendant, who had been drafted for such service.

The plaintiff's son was seventeen years old when he entered the army as a substitute for the defendant, in September, 1863.   The name of the plaintiff was forged to a consent that his son might enlist in the army.   He had previously consented that three other sons might serve in the army, and they had gone into the Union army as volunteers; but he did not give his consent to Nathaniel going, and did not know he was going until he had entered the service as a substitute for the defendant.   The defendant paid Nathaniel $200 for enlisting in the army as his substitute.

The action was tried at the Schuyler circuit, in December, 1864, when the jury rendered a verdict in favor of the plaintiff for $250 damages.   Judgment was suspended, and the defendant moved for a new trial on a case and exceptions.

JOHN J. VAN ALLEN, *for plaintiff.*

I. The plaintiff being entitled to the services of Nathaniel, his minor son, by reason of the relation existing between them as parent and child, has the right to maintain this action for the damages sustained by him, by reason of his rights having been invaded.

Whenever a servant is enticed from his master's service, the master is entitled to his action of trespass on the case with a *per quod.*

If a servant be taken away from his service, his remedy is tresspass *vi et armis* with a *per quod.*

If he go away from his master's service, and be retained by another, who knows the fact of his having left his master, such person so retaining is liable to the master in an action on the case. (*Reeves' Dom. Rel.* 375; *Ld. Ray,* 1116; *Salk.* 38; *Cowp.* 56; 3 *Salk.* 391; 2 *East.* 8, 13; *Esp.* 645; *Lewerd* agt. *Basely,* 1 *Ld. Ray,* 62; 1 *Salk. R.* 407; *Dubois* agt. *Allen, Anthon,* 94; *Philips* agt. *Squier, Peake's Nisi Prius,* 82.)

II. There was no error in the rulings of the judge, upon the trial of the cause, in receiving improper testimony.

The objection of the plaintiff's counsel to the defendant proving that the boy had previously or subsequently said to a stranger (and not to either of the parties), he desired to go to the army and was bound to go, was properly sustained. His declarations were not, and could not be, used to prejudice us in the recovery of the loss we had sustained. It was not proposed to be proved that the plaintiff proposed to emancipate him, or to relinquish any right he might have to his services.

This kind of action materially differs from that brought by a husband for harboring his wife. In such case, it is a good defense to prove that she is so kept from motives of humanity to secure her from the ill treatment of her husband.

In a case like this such defense could not prevail, the

.action being founded solely on the loss of services. (*Peake's Nisi Prius*, 82.)

In no aspect of the case could this evidence be material. As the boy was under the control of his father, and his services belonged to him, therefore the son had no legal right to go into the army without the consent of his father, and thus deprive him of this right to his services. (*James* agt. *Le Roy*, 6 *Johns. R.* 247.)

III. The court properly refused to charge the jury as requested by the defendant's counsel.

The court had properly charged the jury previously, in respect to all the subjects contained in the requests of the counsel; therefore, if the counsel was dissatisfied with the charge as made, he should have specially excepted. The court was under no obligation to repeat his charge to the jury; and if any error was committed, it is now too late to except, and the right of exception on the part of the defendant is lost.

The only exception to the charge will be found at folio. 144. The court expressly charged the jury, that the question of damages was for them to determine, and they were not to give exemplary damages unless the defendant acted in bad faith.

If the jury found that the defendant had by means of covine and fraud enticed the son of the plaintiff away beyond his reach and control, as we allege, and most clearly proved he did, then we most certainly had the right to exemplary damages.

*Cowen*, in his treatise (*4th ed.* § 1527), says; "In actions for a wrong, the damages may in some cases exceed the naked injury sustained by the plaintiff. In these cases they are called *vindictive* or exemplary damages, being given as an indemnity to the plaintiff for his time and expenses in seeking his remedy, as well as a compensation for his injury. The actions in which they are warranted are confined to cases where the conduct of the defendant has been willful, malicious

or cruel, or of evil example. Thus, in an action for enticing away the plaintiff's indented servant, the rule is to give as damages the value of the services of the servant while in the defendant's employment; and in aggravated cases the jury may give the whole value of his services during the time for which he was indebted." (*Athon's Nisi Prius*, 94; 4 *Moore*, 12; *Tillotson* agt. *Cheetham*, 3 *Johns. R.* 56; *Cook* agt. *Ellis,* 6 *Hill*, 466; *West* agt. *Jenkins*, 14 *Johns. R.* 352.)

The defendant most certainly had no reason to complain of the charge of the judge in respect to the question of damages. In determining the question of the value of the son's services, we insist that in justice to the plaintiff, his honor the judge should not have instructed the jury that in determining the value of the services they were to consider the price he was earning when at service before going into the army. He should have instructed them to fix as a basis the price substitutes for drafted men were worth, and this should have formed the basis of the estimate for the services, as the plaintiff was entitled to recover their value, and such services, like an article of merchandise, were worth the price being paid therefor.

The charge, we insist, was more favorable to the defendant than the plaintiff, and, inasmuch as the defendant is in no wise prejudiced, we insist that the motion for a new trial should be denied, and judgment ordered for plaintiff on the verdict.

J. McGuire, *for defendant.*

*By the court,* Mason, J. The judge at circuit, in my judgment, committed two errors in giving the rule of damages to the jury. In the first place, he charged the jury that, if the plaintiff was entitled to recover, their verdict should be the value of the services of his son for the full term of three years, if living, and advised them that they would probably find he was living; and to this the defendant's counsel

excepted, and requested him to charge the converse. This proposition cannot be sustained. The plaintiff's son enlisted in September, 1863, and this suit was commenced in the spring of 1864, and the cause was tried in December, 1864. The case of *Hambleton* agt. *Veere* (2 *Saund. R.* 169), holds that in this action for enticing away the plaintiff's servant, that he can only recover for the loss of service up to the time of the commencement of the suit. The case was most ably argued, and the King's bench, *tota curia*, as the report shows, gave deliberate judgment, holding that the plaintiff could only recover for the loss of service up to the time of the commencement of the action; setting aside the verdict, because damages had been for the whole residue of the term. Three reasons were assigned against allowing the damages for the unexpired term. The first was, that the apprentice might return to his master, and so the plaintiff have the benefit of his services; secondly, the master might compel his return; and, third, that the apprentice might die during the term, and the plaintiff could not then recover, because the death happened by the act of God. This case has never been overruled, but was approved by LITTLEDALE, Justice, so late as 1840, in pronouncing the opinion of the court in *Hadsell* agt. *Stallebross* (11 *Adol. & Ellis*, 361; 3 *Eng. Com. Law*. 94, 96).

I have not been able to find, after the most careful examination, that the case of *Hambleton* agt. *Veere* has ever been overruled or questioned, so far as the general rule there laid down is concerned.

The rule is laid down in *Dubois* agt. *Allen* (*Anthon's Nisi Prius*, 94), that, in an action on the case for enticing away the plaintiff's servant, the general rule of damages is the value of the service during the time the servant has been in the defendant's employ.

I know there are cases, where the action is brought to recover for the loss of service resulting from assault and battery, or personal injury, committed upon the servant, that the courts have allowed a recovery for the full unexpired

term, but they are cases where the proof showed the injury was permanent. Those cases have no application to the case at bar, for the servants were actually shown to be disabled.

It may be said that the case under consideration is not like ordinary cases of this kind, for enticing away a servant, for the reason that the defendant caused or procured the plaintiff's son to enlist in the army, and he is bound to military service, and cannot act his free volition in regard to returning. This argument is good for what it is worth. There are very many probable contingencies upon which he may be discharged before the end of three years. He may become sick, and the government discharge him; he may be disabled by wounds to serve in the army, and be discharged. His enlistment was clearly illegal, being procured upon a forged written consent of his father. It became, therefore, the duty of the secretary of war, under the act of congress and articles of war, to discharge him, on his father's making proof of this fact. The plaintiff, therefore, might procure his discharge.

There is still another answer. The enlistment was to end with the war, and the law will not presume in such a case that the war will continue three years. The law presumes that a fact continuous in its character still continues to exist, until a change is shown, as that a life still continues, or that a partnership proved to exist still continues (1 *Cow. & Hill's Notes*, 295); and so a state of war proved to exist three years ago is presumed in law to be still existing, unless the contrary be shown, but the law indulges no presumption at the present time that it will continue three longer. On the contrary, war is not the normal, but an exceptional state of society, and is generally regarded as a thing not to be desired either by individuals or nations. Peace is desirable, and not war, and the presumption is that men and nations will do that which is for their interests, and act with reference to them. The law, however, will not indulge in any presumption in regard to a future condition of war or peace. God alone knows what the future has in store for nations, and

finite courts, whose visions cannot penetrate the future, should not speculate as to its probabilities, much less attempt to solve them and make them the basis of their judgment.

The rule is reasonable which presumes the continuance of an existing fact at the time of the trial, for the other party can overthrow it by proof if it be not so; but when it presumes a future continuance, the party has no ability to unfold the future and give an answer by his proof. The only safe rule, in cases of this kind, is to limit the loss of service up to the commencement of the suit, as was done in *Hambleton* agt. *Veere*, or, at the furthest, up to the time of the trial.

The judge left it to the jury to say whether, from the evidence, the plaintiff's son was dead or not, and then in this connection charged the jury that, if they should find that he is dead, and that the defendant enticed him into the army when he knew he had no right to do so, that they might award such vindictive damages to the plaintiff as they should think would be right for the punishment of the defendant, and as a compensation of the time and trouble of the plaintiff in prosecuting this action; and this was excepted to by the defendant's counsel. This portion of the charge certainly is erroneous. It is well settled that the master cannot recover in an action, even for the loss of service, where the defendant has beaten his servant to death. (*Higgins* agt. *Butcher*, *Yelv.* 39, 90; 1 *Browl.* 205; *Ney.* 18; *Ld. Raym.* 259; 12 *Petersdorf Abr.* 406, 594, *note;* 15 *N. Y. R.* 432; 23 *N. Y. R.* 478; *Reeves' Dom. Rel.* 376, 377.) The rule is also well settled that in trespass, for an assault upon the child or servant of the plaintiff, *per quod servitum amisit*, the measure of damages is the actual loss which the plaintiff has sustained, and that exemplary damages cannot be given, although the assault be of an indecent character upon a female, and under circumstances of great aggravation. (4 *Den. R.* 461; 24 *W. R.* 429.) Now, if the law will not give to the parent exemplary or vindictive damages, against a person who insultingly assaults and beats, with great circumstances of aggravation, his

daughter, but confines him simply to his claim for loss of services, I can see no reason why it should give him exemplary damages simply for enticing him away from his service and placing him in circumstances where there is simply a possibility he may be injured or killed by others. And as the rule is well settled that the master or parent cannot sustain an action at all for loss of service, against one who kills his servant outright, it cannot be guilty of the inconsistency of punishing the party with exemplary damages, simply that he induces the servant to place himself in circumstances where his life is simply in danger, and in consequence of which he loses his life.

This is not a case where the law allows punitive or exemplary damages. The foundation of the action is the loss of service, and the recovery should be the damage sustained. The guilt and moral turpitude is greater to commit a gross and inhuman assault and battery upon a servant, and thus disable him, or to commit an indecent assault and battery upon a female, than is the conduct of the defendant in this case, who simply paid the plaintiff's son $200 to induce him to go into the army as a substitute for him, after being informed that the young man desired to enlist and go for a bounty from some one. The act, to be sure, is an illegal and wrongful act, as regards the father, unless his consent is obtained; that obtained, and there is no wrong in it.

The services to be rendered are respectable and honorable, and if rendered in defense of his government and his country, are commendable, and the only thing about it is the legal wrong of depriving the father of the services of his child. This, I mean, is all, so far as the plaintiff is concerned. He cannot have his wounded feelings solaced by any award of damages at the hands of the jury. (*Cowden* agt. *Wright*, 24 W. R. 429.) Now why should the plaintiff be entitled to exemplary damages of the defendant, if his son is killed? I know of no other reason only as a *solacium* to his wounded feelings. The defendant has done precisely the same wrong,

whether the plaintiff's son is killed in battle or survives to return to his friends.

The case of *Gunter agt. Astor and others* (4 *J. B. Moore's R.* 12; 15 *Eng. Com. Law R.* 357), is relied on as holding a different rule, and as justifying the charge of the judge in the case at bar. The head note of the case declares that, "in an "action on the case for enticing away the plaintiff's servants, "the measure of damages is not to be ascertained at the "actual loss he sustained at the time, but for the injury done "him by causing them to leave his employment." The case was a peculiar one, and attended with circumstances of great aggravation. The plaintiff was a manufacturer of piano fortes, and the defendants conspired together to entice away the plaintiff's servants and employees in a body. They invited the plaintiff's servants to a dinner and got them drunk, offered them higher wages and induced them to sign an agreement to leave the plaintiff's service and go into their service, and they all left the plaintiff accordingly; by which the plaintiff's business was broken up, and he nearly, if not absolutely ruined. And the judge left it to the jury to ascertain what damages the plaintiff had sustained by the misconduct of the defendants, and the jury found a verdict for the plaintiff for £1600; and the court sustained the verdict and denied a new trial. The complaint charged the defendants with a conspiracy, and the jury so found from the evidence. The case rests upon its own peculiar circumstances, and is no authority as controlling the rule of damages in the action generally, or in a case like the present, where the plaintiff's son, while working away from home, went and sought the defendant and offered to go as a substitute for him, learning that he wished to procure one. And the case seems to have been sustained upon the ground that the jury found that the plaintiff had actually sustained that amount of damages. Be that as it may, it can hardly be regarded as an authority overruling a rule of damages so long established as has been the rule, in this action especially. No reference is made in the decision

to the prior adjudged cases. The case, to say the least, is of questionable authority, as the servants were not bound to the plaintiff for any time of service, but were only to work by the piece. If the verdict can be sustained at all, it must be on the ground of fraud and conspiracy alone.

I am of opinion the charge of the judge was wrong in both respects, and that a new trial should be granted.

PARKER, J., concurred.

BALCOM, J. (*dissenting*.) This case was tried, as too many are, by counsel without briefs, or very meagre ones.

The plaintiff can have only one action against the defendant for enticing away his son from his service. If he had recovered in this action only for the loss of his son's services to the time he commenced it, he could not maintain another action against the defendant for the loss of his son's services since that time, for the reason that he could not have two actions for the same cause, *i. e.*, for enticing away his son from his service by the defendant, in September, 1863. (*See Fetter* agt. *Beal*, 1 *Lord Raym. R.* 339; *S. C.* 1 *Salk.* 11; *Sedgwick on Damages*, 3d ed. 106; *Secor* agt. *Sturgis*, 16 *N. Y. R.* 554.)

Was the plaintiff entitled to recover damages for the loss of his son's services subsequent to the commencement of the action? And what is the true rule of damages in the case?

The court of king's bench held, in *Hambleton* agt. *Veere* (2 *Saund. R.* 196; *S. C.* 2 *K. B.* 693; *Ld. Raym.* 200; 1 *Lev.* 299), that the plaintiff could only recover for the loss of the services of his apprentice, who had been enticed away by the defendant, to the time of the commencement of the action, and arrested the judgment, because it did not appear but the jury had given damages for the term the apprentice was bound to the plaintiff, which had not expired. That case was decided in the reign of Charles the Second.

All that was decided, in *Dixon* agt. *Bell* (1 *Starkie*, 287), respecting the damages the plaintiff could recover for the

negligence of the defendant, by which the plaintiff's son was wounded, was that the plaintiff could recover the surgeon's bill for attending his son, "since the surgeon could compel the payment of it as a legal debt;" but that he could not recover the physician's fees, " since they had not been actually paid, and he could not enforce the payment by action."

The head note to *Gunter* agt. *Astor and others* (4 *J. B. Moore's R.* 12), is: " In an action on the case for enticing away the plaintiff's servants, the measure of damages is not to be ascertained at the actual loss he sustained at the time, but for the injury done him by causing them to leave his employment." Lord Chief Justice DALLAS said - " I left it to the jury to give damages commensurate with the injury the plaintiff had sustained. The defendants clandestinely sent for his workmen, and, having caused them to be intoxicated, induced them to sign an agreement to leave him and come to them; by which the plaintiff was nearly, if not absolutely, ruined. I am by no means dissatisfied with the verdict the jury have found (which was £1600), as the conduct of the defendants, in point of fact, amounted to an absolute conspiracy, and I therefore think the court cannot now be called on to interfere by granting a new trial." Mr. Justice PARK said: " The misconduct of the defendants in this case appears to have been most gross. It has been said the plaintiff has only sustained damage for the value of the half day's labor of his workmen, when they visited the defendants; but it is not for the court to ascertain the precise damages he is entitled to, as that was most properly left by my lord chief justice to the jury." Mr. Justice RICHARDSON said: " This was an action for seducing and enticing away the plaintiff's servants. The measure of damages he is entitled to receive from the defendants is not necessarily to be confined to those servants he might have in his employ at the time they were so enticed, or for that part of the day on which they absented themselves from his service, but he is entitled to recover damages for the loss he sustained by their

leaving him at that critical period. It appears, too, that the defendants combined to allure them from his service, and I do not think the court ought now to infer that two year's profit is too much for the plaintiff to recover." A new trial was refused in that case, and it was decided in 1819.

The case of *Dubois* agt. *Allen* (*Anthon's Nisi Prius R.* 128) was tried before Mr. Justice VAN NESS, at the New York circuit, in 1809, and it was an action on the case for enticing the plaintiff's indented servant from his service. The defendant's counsel cited *Hambleton* agt. *Veere* (*supra*), and contended that the correct rule of damages was the value of the servant's services during the time she was in the employ of the defendant. But VAN NESS, J., said: "The value of the service during the time the servant has been in the employ of the defendant is the general rule; but the jury may, in certain aggravated cases, give the whole value of the servant by way of damages. The testimony, therefore, is admissible, to enable the jury to exercise that discretion. After ill blood has been created between a master and servant, by the intermeddling of a third person, the servant ceases to be of any value to the master."

Judge COWEN uses the following language, in that part of his *Treatise* where he speaks of damages in an action for a wrong, to wit.: "In an action of trespass, where the conduct of the defendant has been willful, malicious or cruel, exemplary damages, or smart money, is also frequently given, by way of punishment to the defendant, and a liberal indemnity to the plaintiff for his time and expense in seeking his remedy, as well as his damages, properly so called; and an exercise of this discretion is, many times, highly salutary and necessary. Accordingly, in an action for enticing away the plaintiff's indented servant, the general rule is, to give damages for the value of the service during the time of the servant's employ with the defendant; but the jury may, in aggravated cases, give the whole value of the servant in

damages, for the whole time during which he is indented." (2 *Cow. Tr.* 2d ed. 1007.)

In an action for an assault and battery, the plaintiff may recover for damages accruing after the commencement of the suit, provided they are the direct and natural consequences of the battery. (*Birchard* agt. *Booth,* 4 *Wis. R.* 67 ; *also see Fetter* agt. *Beal, supra.*)

In an action of tort for wounding the plaintiff's servant, whereby he was disabled from serving, the jury may give damages for the loss of the service, not only before action brought, but afterwards, down to a time when, as it appears in evidence, the disability may be expected to cease. (*Hodsoll* agt. *Stallebross et al.* 11 *Adolph. & Ellis,* 301; *S. C.* 9 *Car. & Payne*; 63; *Smith's Master and Servant,* 85.)

"In estimating the pecuniary loss, where the plaintiff receives a personal injury by the negligence of the defendants, all the consequences of the injury, future as well as past, are to be taken into consideration." (*Curtis* agt. *R. and S. R. R. Co.* 11 *N. Y. R.* 534.)

The plaintiff may recover exemplary damages against a man who seduces his female servant and gets her with child. (*See Ingersoll* agt. *Jones,* 5 *Barb.* 661 ; *Lipe* agt. *Eisenlerd,* 32 *N. Y. R.* 229.) But in trespass for an assault and battery upon the child or servant of the plaintiff, the measure of damages is the actual loss which the plaintiff has sustained, and exemplary damages cannot be given, though the assault be of an indecent character upon a female, and under circumstances of great aggravation, for the reason that the child or servant can maintain an action for the assault and battery, "in which the measure of redress depends very much upon the sound discretion of the jury." (*Whitney* agt. *Hitchcock,* 4 *Denio,* 461; *Cowen* agt. *Wright,* 24 *Wend.* 429.)

The plaintiff's son could not maintain an action against the defendant for being enticed away from his father's service by the defendant; and I am unable to see why the plaintiff is not entitled, upon principle, to recover exemplary damages

of the defendant for intentionally and wrongfully depriving him of the services of his son, by inducing him to go into the army as his substitute.

Whether I erred in charging the jury, if the plaintiff's son was killed in battle, the plaintiff could not recover for the loss of his son's services subsequent to his death, is a question not properly before the court on this motion for a new trial. The plaintiff only could complain of that instruction. But upon this question see *Ford* agt. *Munroe* (20 *Wend.* 210), *Green* agt. *The Hudson River Railroad Company* (28 *Barb.* 9), *Peck* agt. *The Mayor*, &c., *of New York* (3 *Comst.* 489), and *Gilligan* agt. *The New York and New Haven Railroed Company* (1 *E. D. Smith's R.* 453).

The plaintiff's son enlisted in the army for three years, and there was no presumption at the time of the trial that the government would not want his services, if alive, during that period, which would end a little short of two years from the date of the trial. It seems to me the most natural presumption at that time was that the government would hold him for the residue of the term of three years for which he enlisted; and I am of the opinion it would have been improper for me to have allowed the jury to find the government would sooner discharge him. I think it was just and reasonable to hold the defendant to the presumption that the plaintiff's son would live and serve as his substitute in the army the whole time for which he placed him there.

The plaintiff's complaint contained sufficient allegations to entitle him to recover all the damages he had sustained at the time of the trial, and would thereafter sustain, by reason of the wrongful conduct of the defendant in enticing his son away from his service; and I am satisfied the plaintiff should not be restricted in his recovery to damages for the loss of the services of his son prior to the commencemet of the action, or to the time of the trial, and that the jury were properly instructed that they might, in their discretion, give exemplary damages, by way of punishment to the defendant,

Covert agt. Gray.

and to compensate the plaintiff for time and trouble in prosecuting the action.

I think the case of *Hambleton* agt. *Veere* (*supra*) should not be followed, so far as it conflicts with these conclusions. It seems to me that case is not sustainable upon principle; and it is too much in conflict with the spirit of decisions since made to control the rule of damages in this action.

It will hardly do to allow persons who wrongfully entice children away from the service of their parents, to get off, in all cases, by simply paying the actual pecuniary damages sustained by the parents for the loss of the services of their children. The pecuniary loss in cases is sometimes very small, when the parents' grief is overwhelming. The best interests of society require that the jury should be permitted to punish persons, in proper cases, with exemplary damages, who wrongfully interfere with the rights of parents and masters, in respect to the services and care of their children and servants. Parents and masters should have a remedy commensurate with the wrong that is done them, and sufficient to prevent them from resorting to personal violence upon those who thus interfere with their rights, and to deter lawless and evil disposed persons from committing such wrongs.

For these reasons, I am of the opinion I committed no error on the trial of this action to the prejudice of the defendant, and that his motion for a new trial should be denied, with costs.*

* NOTE.—Since the decision of this case, I have discovered that my views respecting the rule of damages in it are sustained by the supreme courts of Massachusetts and New Jersey. See *Stowe* agt. *Heywood* (*7 Allen*, 118), *Magee* agt. *Holland* (3 *Dutcher*, 86).