# COURT OF APPEALS.

## January, 1919.

## MARGARET TIDD v. C. B. SKINNER et al.

(225 N. Y. 422.)

(1.) PUBLIC HEALTH LAW—PARENT AND CHILD—SALE OF HEROIN TO IN-
FANT IN VIOLATION OF STATUTE.*

The right of a parent to recover for loss of services of an infant
child has long been recognized at common law, and while it is a general
rule that damage will not be permitted if the evidence shows that the
child's negligence was the efficient cause of the injury, yet if the conduct
of the defendant in such a case was so deliberate, persistent and inten-
tional as to be equivalent in law to positive and willful injury the con-
tributory negligence of the child is not a defense.

(2.) SAME—WHEN MOTHER DEPENDENT ON EARNINGS OF MINOR SON CAN
MAINTAIN ACTION AGAINST DRUGGIST FOR SELLING HEROIN TO HIM, WHEREBY
HIS HEALTH WAS RUINED AND HIS SERVICES LOST.

This action is brought by a widow to recover damages for loss of the
services of her son, which she alleges was caused by the defendants by
the sale to him of heroin which is a poison within the provisions of the
Public Health Law (Cons. Laws, ch. 45, § 236) as it existed prior to the
amendment by chapter 502 of the Laws of 1915. The statute also pro-
hibits the delivery of the poison by the seller without satisfying himself
that the purchaser is aware of its poisonous character and that the poison
is to be used for a legitimate purpose. A violation of this provision is
a misdemeanor. (Penal Law, § 1743.) The defendants failed to obey
these statutes by selling the drug to plaintiff's son in large quantities,
knowing that heroin, except as a medicine used in very small quantities
and under the direction of a physician, is a poison dangerous to human
life. The facts alleged in the complaint and which the jury might have
found from the evidence justify a verdict for the plaintiff.

(3.) SAME.

As to several exceptions to the charge, refusals to charge and modifi-
cations of defendants' requests to charge, they must be read with all that

* Note by Editor.—While above is not strictly a criminal case, it relates
to the sale of poisons and may prove of some value to the profession. See
note, Vol. 29, p. 398; Vol. 28, p. 55; Vol. 35, p. 25.

was said by the court in connection therewith and with the facts necessarily found by the jury. As so read no question of controlling importance is presented.

(4.) SAME—COMPENSATORY DAMAGE ONLY CAN BE RECEIVED.

The court directed the jury that in case they found a verdict for the plaintiff they should find separately as to the compensatory damages and as to the punitive damages. The defendants raised the question that punitive damages could not be awarded. *Held,* that the weight of reason and authority is in favor of confining the damages to be recovered in an action by a third party to compensation for the pecuniary injury actually sustained. Hence, the judgment is modified by reducing the amount of the recovery to the amount found for compensatory damages.

Tidd v. Skinner, 171 App. Div. 98, modified.

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 6, 1916, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Christopher J. Heffernan,* for appellants. The plaintiff did not establish any cause of action against the defendants. (Westbrook v. Miller, 98 App. Div. 590.) The trial judge clearly erred in his charged to the jury in his refusal to charge defendants' requests and erroneously instructed the jury on the question of damages. (Whitney v. Hitchcock, 4 Den. 461; 1 Sedgwick on Dam. [9th ed.] 687, 710, 733; Craven v. Bloomingdale, 171 N. Y. 439; Curl v. C., R. I. & P. Ry. Co., 63 Iowa 417; New Orleans, J. & G. N. R. Co. v. Stathan, 42 Miss. 607; C. & N. W. Ry. Co. v. Jackson, 55 Ill. 492; L., N. A. & C. Ry. Co. v. Wurl, 62 Ill. App. 381.)

*Frank Cooper and J. J. Barry,* for respondent. Plaintiff clearly established a substantial cause of action for the wrongful acts of the defendants. (Maxson v. D., L. & W. R. R. Co.,

112 N. Y. 559; Riddle v. MacFadden, 201 N. Y. 215; Bennett
v. Bennett, 116 N. Y. 584; Gorlitzer v. Wolfberger, 208 N. Y.
475; Hoard v. Peck, 56 Barb. 202; Hillman v. Howard, 119
N. C. 119; Flaudermeyer v. Cooper, 31 Ohio, 402; Lawyer v.
Fritcher, 130 N. Y. 239; Hewit v. Prime, 21 Wend. 79; White
v. Nellis, 31 N. Y. 405; Ingerson v. Miller, 47 Barb. 47;
Badgley v. Decker, 44 Barb. 588.)    There was no error com-
mitted in the trial court's charge to the jury nor in his refusal
to charge appellants' requests.    The amount of compensatory
damage was amply justified by the evidence, and punitive dam-
ages supported by authority.    (Lawyer v. Fritcher, 130 N. Y.
239; Ingerson v. Miller, 47 Barb. 47; Badgley v. Decker, 44
Barb. 577; Hamilton v. Lomax, 26 Barb. 617; Holmes v. James,
147 N. Y. 67; Reid v. Terwilliger, 116 N. Y. 530; Colwell v.
Tinker, 169 N. Y. 535; P., W. & B. R. R. Co. v. Quigley, 62
U. S. 203.)

CHASE, J.:

This action is brought by a widow to recover damages for loss
of the services of her son, which she alleges was caused by the
defendants as herein stated.    The defendants at the times herein
mentioned were druggists of experience engaged in conducting
retail drug stores, one of which was in the city of Amsterdam.
The plaintiff at the times herein mentioned lived in the city of
Schenectady.    She had a son who at eighteen years of age was
of good physique and fair ability.    He lived with his mother
and was employed by others at remunerative wages.    The
mother, except for the aid of the son, was dependent upon her
labor to maintain her household.    The son was kind, helpful
and obedient to his mother and brought to her all or a substan-
tial part of his earnings.    About that time and within four or
five weeks before January 1, 1912, he was given fifteen or
twenty tablets, each containing from one-twelfth to one-eighth
of a grain of heroin, by a boy friend.    During that time he

used these tablets, and he testified, " I felt like I wanted it. I liked it."

Heroin is a derivative of morphine.   It is a poison within the provisions of the Public Health Law (Cons. Laws, ch. 45) as it existed at the times herein mentioned.   (Public Health Law, § 238, as it existed prior to the amendment of chapter 502 of the Laws of 1915.)   The statute referred to provided: " It is unlawful for any person to sell at retail or to furnish any of the poisons of schedules A and B (schedules A and B as contained in section 241 of the Public Health Law) without affixing or causing to be affixed to the bottle, box, vessel or package a label with the name of the article and the word poison distinctly shown and with the name and place of business of the seller all printed in red ink together with the name of such poisons printed or written thereupon in plain, legible characters."

It also provided: " Every person who disposes of or sells at retail or furnishes any poisons included in schedule A shall before delivering the same enter in a book kept for that purpose the date of sale, the name and address of the purchaser, the name and the quantity of the poison, the purpose for which it is purchased and the name of the dispenser.   The poison register must be always open for inspection by the proper authorities and must be preserved for at least five years after the last entry. He shall not deliver any of the poisons of schedule A or B until he has satisfied himself that the purchaser is aware of its poisonous character and that the poison is to be used for a legitimate purpose."   Any person who violates any of the provisions of the Public Health Law mentioned is guilty of a misdemeanor.   (Penal Law, § 1743.)

The defendants at all the times mentioned knew of the existence of the statutes relating to the sale of poisons.   The jury could have found from the evidence that about January 1, 1912, plaintiff's son went to Amsterdam from Schenectady and en-

deavored to purchase heroin of the defendants, but was asked if he had purchased it of them before, and when he answered in the negative was told that they could not sell it to him.    Soon thereafter he went again to Amsterdam, and to the defendants' store.    His boy friend was with him, and his friend said to one of the defendants that he (plaintiff's son) " Was all right if he wanted to buy any heroin."    Thereafter, and on the same day, plaintiff's son went alone to the defendants and purchased from them two hundred tablets.    From that time until he became twenty-one years of age, a period of between two and three years, he purchased of the defendants, except during the times when he was in a hospital or confined under criminal process, more than three hundred tablets per week.    One week he purchased of them one thousand tablets.    Each of the tablets so purchased contained either one-twelfth or one-eighth of a grain of heroin.    During a part of the time plaintiff's son personally pulverized and inhaled seventy-five to one hundred tablets per day.    He became a physical wreck.    He not only abandoned his work, but he pawned his clothing and also carpets, rugs and furnishings from his mother's home to obtain money to buy the drug.    At the time of the trial he was brought as a witness from the county jail where he was serving a term for petit larceny.

The defendants wholly failed to obey the statutes quoted, knowing that heroin, except as a medicine used in very small quantities and under the direction of a physician, is a poison dangerous to human life.

The jury could have found that one of the defendants stated to the plaintiff's son that he should be careful not to let any one know that he was getting heroin at the defendant's store, as it might make trouble for them.    They could also have found that the change in the habits and physical condition of plaintiff's son, and his consequent conduct and general incapacity, were the results of the use of heroin purchased of the defendants; that in selling it to him as stated they knew that he was making an

improper use of it, and that its use was injuriously affecting his health, and that their conduct in the repeated sales to him in the manner and to the extent as shown was reckless and equivalent in law to willful injury. Upon the facts necessarily found in this case the sales were entirely different from those ordinarily made by a druggist at the request of a customer.

The jury found for the plaintiff and an appeal was taken from the judgment entered upon their verdict to the Appellate Division where the judgment was unanimously affirmed, the court expressly stating in its opinion that the verdict was not against the weight of evidence and that " the proof does abundantly establish * * * that the defendants were wholly reckless of the rights of others." The judgment of the trial court entered upon the verdict of the jury having been unanimously affirmed by the Appellate Division it is on this appeal incontrovertibly established that the facts presented at the trial sustain the verdict. (Constitution, art. 6, § 9; Code Civ. Pro., § 191.) The judgment must be sustained by this court unless error was committed in the rulings upon the admission or rejection of evidence or in the charge by the court to the jury.

Numerous questions are presented to us by the appellants arising from rulings of the court upon objections to the receipt of evidence during the trial. The appellants claim that the court erred in receiving evidence to show that the plaintiff's son had taken carpets and rugs from the floor of her home and pawned them and also to show his other efforts to obtain money to purchase heroin. We do not think that the court erred in the rulings mentioned. It was a part of the history of the son during the time mentioned, and tended to show the dominating influence that heroin had over his time and his thought as it affected his time, and the consequent loss of his services to his mother.

There were no exceptions taken to the main charge of the court except those relating to punitive or vindictive damages.

The only exceptions taken by the defendants to their request to charge made at the close of the main charge other than those relating to punitive or vindictive damages hereinafter referred to, were taken in connection with other statements and charges by the court, all of which we quote as follows:

" Mr. Heffernan: I ask your Honor to charge that the defendants had a legal right to sell and offer for sale heroin between the first day of January, 1912, and the first day of July, 1914, without the direction or prescription of a physician on complying with the terms of the statute as to registering it and labeling it.

" The Court: I will charge the jury that at the time of the sales in question, if there were such sales, there was no statute of the State which prohibited the sale by these defendants of the drug known as heroin without a doctor's prescription, and I also charge the jury that cases can arise where the sales are so excessive and made with such purpose that a civil action will lie for damages resulting from such sales, in which case the sales could not be termed rightful.

" Mr. Heffernan: The defendants except to your Honor's modification. I ask your Honor to charge the jury that in order to find a verdict for the plaintiff the jury must be satisfied from the evidence that the defendants sold heroin to Rooney knowing that Rooney was making an improper use of it and that its use was injuriously affecting his health.

" The Court: I so charge.

" Mr. Heffernan: I ask your Honor to charge the jury that there is no evidence in this case upon which the jury can find that the defendant knew or had reason to know that Rooney's When the child's father is dead the mother can maintain the

" The Court: I decline to charge that on the ground that health was being injuriously affected by heroin. the defendant was a pharmacist and from his position as a pharmacist the jury might infer that he had knowledge of the

drug heroin and of its consequences and also from the size of the doses claimed to have been sold.

"Mr. Heffernan: We except to your Honor's modification. I ask your Honor to charge that if the defendants between January 1, 1912, and June, 1914, sold heroin in the ordinary course of business to Rooney or to others on their application, the defendants are not liable for the improper use of it made by the purchasers.

" The Court: For improper use made by the purchasers?

" Mr. Heffernan: Yes.

" The Court: Refused.

" Mr. Heffernan: I except to that. I ask your Honor to charge that there is no evidence in this case that the defendants knew or had reason to know that Rooney was not using heroin in a proper or lawful manner.

" The Court: I will refuse to charge that on the ground that there is proof in this case to the effect that the use of 500 tablets of heroin a week is not known for medical purposes.

" Mr. Heffernan: I except to your Honor's statement. I ask your Honor to charge that there is no evidence in this case that the defendants wrongfully, unlawfully, or by acts or words requested, solicited or induced the plaintiff's son to enter their store or to purchase or use heroin.

" The Court: I charge that there is no evidence of active inducement of the son of the plaintiff to enter the store of the defendants and acquire the drug habit.

" Mr. Heffernan: Now I ask your Honor to charge that there can be no recovery by the plaintiff here unless the defendants or either of them requested, solicited, or induced Rooney to enter their store, for the purpose of selling or giving to him hereoin.

" The Court: Refused.

" Mr. Heffernan: Except. I ask your Honor to charge that if the jury find that Rooney had become addicted to the use of

heroin before he claims he made his first purchase from the defendants, then the jury's verdict must be no cause of action.

"The Court: I so charge."

It will be seen from the above quotation that the defendants took but five exceptions. The first exception followed a charge by the court in accordance with the defendant's request in which the jury were told "that at the time of the sales in question, if there were such sales, there was no statute of the State which prohibited the sale by these defendants of the drug known as heroin without a doctor's prescription," but the court added: "Cases can arise where the sales are so excessive and made with such purpose that civil action will lie for damages resulting from such sales in which case the sales could not be termed rightful." It was not error to leave the jury to consider the purpose and extent of the sales. The purpose and extent of the sales were questions of fact. Heroin being a poison the purpose and extent of the sales were proper subjects of consideration in the action.

The second exception was after the court had charged at the defendants' request that the jury *must be satisfied that the defendants sold heroin to plaintiff's son knowing that he was making an improper use of it and that the use was injuriously affecting his health* and the defendants had made a further request that the court charge the jury "That there is no evidence in this case upon which the jury can find that the defendant knew or had reason to know that Rooney's health was being injuriously affected by heroin." The modification by the court to which the exception was taken is in words as follows: "The defendant was a pharmacist and from his position as a pharmacist the jury might infer that he had knowledge of the drug heroin and of its consequences and also from the size of the doses claimed to have been sold." The defendants' knowledge of the drug heroin was established. The modification was not error.

The third exception was to the refusal of the court to charge

" That if the defendants between January 1, 1912, and June, 1914, sold heroin in the ordinary course of business to Rooney or to others on their application the defendants are not liable for the improper use of it by the purchasers." The charge so far as it relates to sales to others than Rooney was immaterial and the sale to Rooney could not be disassociated from the facts and circumstances affecting such sales. The court had charged that in order to find a verdict the jury must be satisfied that defendants sold the heroin to Rooney knowing that he was making an improper use of it and that its use was injuriously affecting his health.

The fourth exception was to the refusal of the court to charge the jury " that there is no evidence in this case that the defendants knew or had reason to know that Rooney was not using heroin in a proper or lawful manner." The court did charge in connection with such refusal that his refusal was " on the ground that there is proof in this case to the effect that the use of five hundred tablets of heroin a week is not known for medical purposes." This exception does not present a question of law.

The fifth exception was to the refusal to charge that " there can be no recovery by the plaintiff here unless the defendants or either of them requested, solicited or induced Rooney to enter their store for the purpose of selling or giving to him heroin."

The court refused to charge as requested after saying: " I charge that there is no evidence of active inducement of the son of the plaintiff to enter the store of the defendant and acquire the drug habit."

The question raised by exceptions as we have shown are few. In considering them they must be read with all that was said by the court in connection therewith and with the facts necessarily found by the jury. As so read no question of controlling importance is presented.

The right of a parent to recover for loss of services of a child

has long been recognized at common law.    (Maxson v. D., L. & W. R. R. Co., 112 N. Y. 559; Lawyer v. Fritcher, 130 N. Y. 239; King v. Viscoloid Co., 219 Mass. 420; Cowden v. Wright, 24 Wend. 429.)

Such an action is sustained when the loss of services has been caused by an assault and battery (Cowden v. Wright, *supra*); indecent assault (Whitney v. Hitchcock, 4 Den. 461): negligence (Maxson v. D., L. & W. R. R. Co., *supra;* Cuming v. Brooklyn City R. R. Co., 109 N. Y. 95); abduction (Lawyer v. Fritcher, *supra*), or other tort by which the parent's right to the services of the child is taken away in whole or in part. action.    (Gray v. Durland, 51 N. Y. 424.)

It is an established general rule of law that where a parent sues for loss of services arising from an injury received by his infant child, damages will not be permitted if the evidence shows that the child's negligence was the efficient cause of the injury.    (Kennard v. Burton, 25 Me. 39; Honegsberger v. Second Ave. R. R. Co., 2 Abb. Ct. App. Dec. 378; Dennis v. Clark, 56 Mass. 347, 354; Kerr v. Forgue, 54 Ill. 482; Moore v. Pennsylvania R. R. Co., 99 Penn. St. 301; Chicago, B. & Q. R. Co. v. Honey, 63 Fed. Rep. 39; Ainley v. Manhattan Ry. Co., 47 Hun, 206.)

It is an equally well-established rule of law that if the conduct of the defendant in such a case was so deliberate, persistent and intentional as to be equivalent in law to positive and willful injury the contributory negligence of the child is not a defense.    (Chapman v. New Haven R. R. Co., 19 N. Y. 341.)    Unless the evidence is without conflict it is always for the jury to determine whether the facts in a given case bring it within one rule or the other.

The question distinctly arises in this case whether the plaintiff is entitled to recover punitive or vindictive damages against the defendants.    The court charged the jury that if they found the defendants " With evil heart desiring to ruin this boy or not

caring at all whether they ruined him or not, knowing that surely he was acquiring this habit, that his life would be more or less affected thereby and that he would eventually become a useless citizen," and permitted "the sale of this poison to make money out of the miseries of this boy and did it from a reckless disregard of any duty towards any human being and out of desire to injure, in such case and no other can you consider the question of so-called punitive or vindictive damages."

The defendants excepted to the charge and the court directed the jury that in case they found a verdict for the plaintiff they should find separately as to the compensatory damages and as to the punitive damages. At the close of the charge the defendants asked the court to charge "That there is no evidence in this case upon which they may predicate or make an award of punitive damages." The court declined to make this charge and the defendants took an exception.

The common-law action which a master or parent has for loss of the services of a servant or minor child is based upon an injury to a property right. Compensation is allowed for loss of services to which the master or parent is entitled and for the expenses incurred by reason of such injury. Much has been written by the courts and by text writers upon the question whether punitive, vindictive, exemplary, aggravated, or retributory damages should be allowed in any case without reaching a generally accepted conclusion. In some States of this country such damages are allowed by statute, and in others they are by statute prohibited. In most of the States, including this State, such damages are allowed to the person directly injured in cases of wrong committed with malice or reckless disregard of the rights of others. Such damages are allowed in this State in an action by a parent against a person who seduces his daughter. It was said in Cowden v. Wright (supra): "It is true, that in the action for the seduction of a daughter, the jury in fixing upon the damages may regard the wounded feelings

of the family; but that case has always been considered *sui generis,* and inconsistent with the fundamental principle of the action." (p. 430.)

We are of the opinion that such damages do not in this case come within the reason on which the common-law action in favor of a third person is sustained. The weight of reason and authority is in favor of confining the damages to be recovered in an action by a third party to compensation for the pecuniary injury actually sustained. (Cowden v. Wright, *supra;* Whitney v. Hitchcock, *supra;* Cuming v. Brooklyn City R. R. Co., *supra;* Barnes v. Keene, 132 N. Y. 13. See, also, Covert v. Gray, 34 How. Pr. 450, and Ruling Case Law, vol. 20, pp. 614, 615, §§ 24, 25, and cases cited.)

The jury found a verdict in favor of the plaintiff and fixed the compensatory damages at $2,000 and the punitive damages at $1,000. Judgment was entered for $3,000 and costs.

The judgment should be modified by reducing the amount of the recovery to $2,000, being the amount found for compensatory damages, and, as thus modified, affirmed, without costs to either party in this court or in the Appellate Division.

HISCOCK, Ch. J., COLLIN, CUDDEBACK, HOGAN and McLAUGHLIN, JJ., concur; CRANE, J., absent.

Judgment accordingly.