# Flaccus *v.* Smith, Appellant.

*Equity—Injunction—Labor unions—Apprentices*

An employer who requires that his workmen shall not be members of labor unions, and who has a contract with his apprentices by which they covenant not to join labor unions, may maintain a bill in equity for an injunction to restrain persons with a knowledge of these facts from enticing his apprentices to break their covenants and to become members of a union.

Argued Jan. 28, 1901. Appeal, No. 15, Oct. T., 1900, by defendants, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1899, No. 790, on bill in equity in case of Charles L. Flaccus v. W. J. Smith, M. S. Branin, John Kunzler, W. J. Clare, T. W. Rowe, P. J. Skelley and J. D. Beatty. Before McCollum, C. J., Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Bill in equity for an injunction.

The case was heard on bill, answer, replication and testimony.

WHITE, P. J., found the facts to be as follows:

1. In September, 1899, the plaintiff had in his factory eighteen or twenty apprentices, besides numerous other workmen. The apprentices were all on written indentures, signed by them and their parents.   The material parts of the indentures, bearing on this controversy, are the following: The apprentice was bound to serve for four years, the plaintiff to teach him the art, mystery, occupation and labor of glass blowing; the plaintiff to pay him, the first and second years, six and one half cents per gross; the third and fourth years, nine cents per gross; but these wages were not due and payable until the expiration of the term, except $5.00 per week to be paid for the first twelve working months, and $8.00 per week for the second twelve working months, and $10.00 per week for the third and fourth years of twelve working months; the balance of the wages to be retained until the end of the term, as security for the faithful performance by the apprentice of the contract; no weekly allowance to be paid when the works were suspended, and the apprentice was bound to make up his absent time ; and it contained this covenant: " and the said apprentice, with the consent of his father, agrees not to join or become a member of, or subject in any manner to the rules or regulations of any labor or other organizations, which shall in any manner interfere with his honest and obedient behavior as an apprentice."

2. On September 13, 1899, P. J. Skelley, an officer and agent of the American Flint Glass Workers' Union, went up to Tarentum, called at plaintiff's factory, and asked permission to go through the works, falsely representing that he was going to start a glass works and bottling works.   Being a stranger, and not having a proper permit, the manager refused his request.   He remained in Tarentum, stopping at a hotel, until after the 19th of the month.   He had gatherings of the workmen and apprentices of plaintiff's works in his room at the hotel every night, sometimes several at a time, and sometimes only two or three, and persuaded them to join the union he represented.   Among those joining were eleven apprentices of

plaintiff. He administered to each an oath or obligation, and then declared they were members of the union.

3. Skelley knew the character of the plaintiff's works as an independent factory, that members of the union were not employed, and that his apprentices were bound, in their indentures, not to join or become subject to the rules and regulations of any such organization as he represented. He knew these facts at the time he swore in these apprentices. He promised them, if they were dismissed, they should be provided for. Some were paid "Benefits" as they were called, by J. D. Beatty, one of the defendants.

4. Ten of the apprentices who joined were under twenty-one years of age, and the other, although over twenty-one, had to make up for lost time. No one had served half of his time, some not one year. When they returned to the factory, they were told they could not go to work while members of the union. Some quit, and some remained.

5. The apprentices who joined the union, violated the covenant in their indenture. It subjected them to the orders of the union, and made obedience to the union paramount to obedience to their master, the plaintiff.

6. The object of Skelley was to break down the plaintiff's factory as a non-union factory; either by preventing the operation of his works, or compelling him to join the union. He boasted that he had organized six union factories since the preceding June. As a part of his scheme there was a written notice served on the plaintiff September 19, signed by sixteen of his employees, eight of whom were apprentices, which, no doubt, was inspired by Skelley, for it was after he had sworn in the members, and while he was still in Tarentum. It was an impudent paper—not a respectful request, but an arrogant demand. It commenced: "On behalf of the glass workers, employees of your bottle works, the undersigned committee respectfully submit the following demands." The demands were that on and after Monday, September 25, the prices to be paid on the various kinds of bottles "shall be the same as paid by union houses," that all the present employees be retained and permitted to join the union; and that all who had been discharged for having joined the union be reinstated.

That this was the real object of Skelley is apparent from

another fact.   He was present in court during the entire trial, but did not take the stand as a witness, and did not controvert or explain any of the testimony in reference to him.

7. The apprentices who joined the union, enticed and persuaded so to do by Skelley, violated an express covenant of their indenture, and one of great importance to the plaintiff, and Skelley knew it at the time.

8. Skelley's conduct and actions were very injurious to the plaintiff in his business, and if repeated and persisted in hereafter, will, in all probability, utterly ruin his business.

9. The other defendants are the chief officers of the American Flint Glass Workers' Union, and were present in court during the trial.   They, by their counsel, openly and boldly justified all that Skelley did, contending that as an officer or agent of the union, he had a perfect right to interfere with plaintiff's apprentices, persuade them to join the union, and secretly swear them in as members.   Of course, if the union has that right, either Skelley or some other agent may go at any time to Tarentum, and thus interfere with the plaintiff's apprentices and business, until his business be destroyed, and no doubt they will do so.

The court entered the following decree:

It is ordered, adjudged and decreed, that the said defendants, and every one of them, individually and as members and officers of the American Flint Glass Workers' Union, their agents, servants, employees, and every of them, be, and they are hereby perpetually enjoined and restrained from interfering with the apprentices of the said complainant, indentured to him, and from persuading said apprentices, or any of them, by any means or in any manner whatever, to violate the terms of their several indentures of apprenticeship, by enticing them to join the said American Flint Glass Workers' Union, or by in any manner interfering with said apprentices, to the injury of the said complainant; and it is further ordered, that the defendants pay the costs in the case, including $27.20 to the stenographer for writing the testimony.

*Error assigned* was the decree of the court.

*Johns McCleave*, with him *D. T. Watson* and *W. J. Brennen*, for appellants.—It is one of the indefeasible rights of a me-

chanic or laborer in this commonwealth, to fix such a value on his services as he sees proper, and under the constitution there is no power lodged anywhere to compel him to work for less than he chooses to accept: O'Neil v. Behanna, 182 Pa. 236; Cote v. Murphy, 159 Pa. 420.

No minor can by the provisions of the acts of assembly be bound as an apprentice longer than till the age of twenty-one: Bonnel v. Brotzman, 3 W. & S. 178; Wood on Master and Servant, 92; Wray v. West, 15 L. T. (N. S.) 180; Drew v. Peckwell, 1 E. D. S. (N. Y.) 408; Phelps v. Pittsburg, etc., Ry. Co., 99 Pa. 109.

Equity will not enjoin an act that is not in violation of any legal right, or that is not an actionable wrong at law : Schouler on Domestic Relations, sec. 487; Bird v. Randall, 3 Burr, 1352; Haskins v. Royster, 70 N. C. 601; Nichol v. Martyn, 2 Esp. 734; Boston Glass Manufacturing Co. v. Binney, 4 Pick. 425.

A man may advise another to break a contract if it be not a contract for personal services : Heywood v. Tillson, 75 Me. 235.

No case can be found where a court of equity has assumed jurisdiction to enjoin a third party from inviting or inducing one of the parties to a contract to violate its terms : Reynolds v. Everett, 50 N. Y. St. Repr. 889.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellee.— Statutes relating to apprenticeship rest largely upon the idea that a minor is incapable of having a will of his own before reaching maturity, and having no will in the matter is to be cared for and protected in such way as in the judgment of the state will best subserve the interests both of himself and the public: Robertson v. Baldwin, 165 U. S. 298.

It is a settled principal of equity jurisprudence that if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit: Davis v. Wakelee, 156 U. S. 686; American Ins. Co. v. Fisk, 1 Paige (N. Y.), 92.

Where equity can give relief, the complainant will not be compelled to speculate upon the chance of his obtaining relief at law : Boyce v. Grundy, 3 Pet. (U. S.) 215; Barr v. Essex Trades Council, 53 N. J. Eq. 101; Watson v. Sutherland, 5 Wall. (U. S.) 79; Westmoreland, etc., Natural Gas Co. v. De Witt, 130 Pa. 235; Conemaugh Gas Co. v. Jackson Farm Gas Co., 186 Pa. 443.

A bill in equity may be sustained solely on the ground that it is the most convenient remedy: Brush Electric Co.'s Appeal, 114 Pa. 574; Kirkpatrick v. McDonald, 11 Pa. 393; Drake v. Lacoe, 157 Pa. 17; Warner v. McMullin, 131 Pa. 370.

OPINION BY MR. JUSTICE BROWN, April 15, 1901:

The appellee is the proprietor of glass works at Tarentum, in the county of Allegheny. In his complaint he sets forth that he has been engaged in the business of manufacturing glass bottles of various kinds, and, in and about their manufacture, has been compelled to employ divers workmen and apprentices; that the appellants and others are members of an association known as the American Flint Glass Workers' Union, affiliated with the American Federation of Labor; that, for a long time prior to the year 1894, he had been greatly hampered and annoyed in his business by the control sought to be exercised over his workmen and apprentices by the said American Flint Glass Workers' Union and the American Federation of Labor, with which it is affiliated; that in the year 1894, he established his factory on an independent basis, employing no workmen or apprentices who were connected with either of the associations named, and expressly requiring his said workmen and apprentices not to be connected with the said American Flint Glass Workers' Union, and, from that time until the filing of his bill of complaint, he had conducted his factory as an independent one, with mutual satisfaction to himself and the men and apprentices employed by him; that the appellants knew his factory was so being conducted as an independent one, and that his workmen and apprentices were not connected with the said American Flint Glass Workers' Union, and had agreed not to connect themselves with the same, and, particularly, that his apprentices were under agreement not to so connect themselves; that his workmen and apprentices were working in harmony until about September 15, 1899, when the said appellants, acting under orders of the said American Flint Glass Workers' Union, claiming the right of declaring strikes and otherwise interfering with the employment of labor, well knowing that his apprentices were under covenant and agreement not to be connected with the said American Flint Glass Workers' Union, began to entice, and did entice, a number of them to break their

covenants or agreements and to become members of the said union, and to become subject to the orders thereof, paramount to his orders as their employer; and that the appellants, by so enticing and endeavoring to entice his apprentices to break their covenants with him by becoming members of the said Union, have done that which is contrary to equity, for which he has no adequate remedy at law. On the answer to the appellee's bill of complaint, and upon testimony taken, the court below found that Skelley, one of the appellants, had gatherings of the apprentices of the appellee at his room in a hotel and persuaded them to join the union referred to; that he knew the character of the appellee's works as an independent factory, in which members of the union were not employed, and that his apprentices were bound in their indentures not to join or become subject to the rules or regulations of any such organization as he represented; that he knew these facts at the time he swore in these apprentices as members of the union; that the apprentices who joined the union violated the covenant of their indenture and subjected themselves to the orders of the union, which made obedience to it paramount to obedience to their employer; that the object of Skelley was to break down the appellee's factory as a non-union factory, either by preventing the operation of his works or compelling him to join the union; that the apprentices who joined the union, enticed and persuaded so to do by Skelley, violated an express covenant of their indenture, which was one of great importance to the appellee, and Skelley so knew at the time he so enticed them; that Skelley's conduct and actions were very injurious to the appellee and his business, and if repeated and persisted in, would, in all probability, utterly ruin his business; that Skelley's codefendants, by their counsel, openly and boldly justified him in all he did, contending that, as an officer or agent of the union, he had a perfect right to interfere with plaintiff's apprentices, persuade them to join the union, and secretly swear them in as members; that if the union had that right, either Skelley or some other agent could go to Tarentum at any time and interfere with the appellee's apprentices and business until it would be destroyed. To this last finding there is no exception.

This is not a controversy between the employer and his employees, but between him and certain individuals associated as

a labor union, unfriendly to the employment of independent labor, and seeking to induce the apprentices of the employer to violate the terms of their indentures with him. No question is here raised by the employer as to what his employees may or may not do, and the complaint sets forth no misconduct by them for which relief is asked. The appellants, outsiders, having no connection with the business of the appellee, are charged with enticing and endeavoring to entice the young men employed by him to violate the covenants of their apprenticeships with him, and protection is prayed for against the threatened ruin of his business, as found by the court below. Having reviewed all the evidence, we are not persuaded that any of the court's findings of fact ought to be disturbed, and, with them before us, the only question to be determined is, whether the injunction should go out.

In the several statutes called to our attention by the learned counsel for appellants, we can find nothing to aid us. The act of September 29, 1770, 1 Smith's Laws, 309, simply provides that a minor may enter into a valid contract of apprenticeship; by that of May 8, 1869, P. L. 1260, the legislature properly declared that " it shall be lawful for any and all classes of mechanics, journeymen, tradesman and laborers to form societies and associations for their mutual aid, benefit and protection, and peaceably meet, discuss and establish all necessary by-laws, rules and regulations to carry out the same; " and the Act of June 14, 1872, P. L. 1175, is that " it shall be lawful for any laborer or laborers, workingman or workingmen, journeyman or journeymen, acting either as individuals or as the members of any club, society or association to refuse to work or labor for any person or persons, whenever, in his, her, or their opinion, the wages paid are insufficient, or the treatment of such laborer or laborers, workingman or workingmen, journeyman or journeymen, by his, her, or their employer, is brutal, or offensive, or the continued labor by such laborer or laborers, workingman or workingmen, journeyman or journeymen, would be contrary to the rules, regulations, or by-laws of any club, society or organization to which he, she, or they might belong, without subjecting any person or persons so refusing to work or labor to prosecution or indictment for conspiracy under the criminal laws of this commonwealth." But nowhere does it appear in the foregoing enact-

ments that these intermeddling appellants had warrant for their interference between employer and employed as charged in the complaint against them ; and with no apprentice, even if he is to be regarded as a "laborer" or "workingman" within the meaning of the last two acts, complaining that his employer has denied him any right under either of them, further demonstration of the inapplicability of any one of these statutes to the question before us is certainly not needed.

The appellee had an unquestioned right, in the conduct of his business, to employ workmen who were independent of any labor union, and he had the further right to adopt a system of apprenticeship which excluded his apprentices from membership in such a union.   He was responsible to no one for his reasons in adopting such a system, and no one had a right to interfere with it to his prejudice or injury.   Such an interference with it was an interference with his business, and if unlawful, cannot be permitted.   The court found that the inteference was injurious to him, and if allowed to continue would utterly ruin his business.   The damages resulting from such an injury are incapable of ascertainment at law, and justice demands that specific relief be furnished in a court of equity.   The test of equity jurisdiction is the absence of a plain and adequate remedy at law to the injured party, depending upon the character of the case as disclosed in the pleadings.   If equity alone can furnish relief, the injunction must be issued: Watson v. Sutherland, 5 Wall. 79.   With this test applied to the pleadings and the facts found by the learned judge in the court below, the decree which he made was proper.   It is now affirmed and the appeal from it is dismissed at the costs of the appellants.