## McCARRON v. DOMINION ATLANTIC RY. CO.

(District Court, D. Massachusetts. January 31, 1905.)

### No. 1,239.

1. MASTER AND SERVANT — FELLOW SERVANTS — ENGINEER AND OILER OF STEAMSHIP.

An engineer on a steamship is a fellow servant of an oiler in the engine room, and his negligence, resulting in an injury to the oiler, creates no liability on the part of the ship.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 492.

Who are fellow servants, see notes to Northern Pac. R. Co. v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

2. SEAMEN—INJURY IN SERVICE—WAGES.

A seaman injured in the service of the ship is entitled to wages for the term of his shipment, where that extends beyond the termination of the voyage.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, §§ 43, 90.]

3. SAME.

The fact that a seaman at the time of his employment was an escaped convict, and subject to recapture, did not deprive him of the rights which ordinarily arise from such employment; and where he was injured in the service, and in consequence left the vessel before the expiration of his term of service, and was subsequently captured and reimprisoned before the expiration of such term, he is entitled to wages to the time of his recapture.

4. SAME—EXPENSE OF CURE.

The liability of a ship for the maintenance and cure of a seaman injured in its service does not terminate with the voyage, but continues until the cure is completed, so far as expenses necessarily incurred for the cure are concerned.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Seamen, § 43.]

In Admiralty. Suit by injured seaman for damages, wages, and expense of cure.

George R. Swasey, for libelant.

Frederic Dodge and Lincoln Bryant, for respondent.

LOWELL, District Judge. This is a libel in personam brought against the owner of the steamer Prince Edward on three causes of action: (1) For personal injuries received March 30, 1898, by the libelant, an oiler, through the gross negligence of Buckley, the third engineer; (2) for the same injuries as received in consequence of the dangerous condition of the engine room; (3) for wages and the expense of cure.

1. As Buckley was the libelant's fellow servant, there can be no recovery on this head.

2. The libelant was sent to take the hose out of a gooseneck or overflow pipe. The reversing machinery was started by Buckley without notice, so the libelant testified. In some way not made clear, the libelant was caught in or thrown down by the machinery, and received the injuries complained of. I can find no evidence that the engine room was an unsafe place, or that it differed in any essential respect from oth-

er engine rooms. The reversing machinery was not ordinarily in motion. The method and scope of its operation were well known to the libelant. There is no evidence that it could have been guarded or protected. The libelant contended that, in order to take out the hose, he must stand very close to the reversing machinery. But at the time of the accident the libelant was not reaching up to unfasten the hose above him. He was near the floor, underneath a pipe. While near the floor he could have kept away from the reversing machinery without difficulty. If the libelant's testimony be accepted, he was hurt, not by reason of defective machinery or of the unsafe condition of the engine room, but by the negligence of Buckley. There are not a few places on every steamer, which must sometimes be visited by the crew, yet which are dangerous if machinery is started without warning while one of the crew is at hand. For example, a sailor may be sent to repair or adjust the bucket of a paddle wheel. If the wheels are started before the job is done, he will be injured, not by reason of the unsafe condition of the paddle box, but by reason of the negligence of the man who starts the machinery. On this head I find for the libelee.

3. The libelant was paid wages to April 1st. The shipping articles provided, in substance, for a service of six months unless sooner discharged upon a week's notice. In The Osceola, 189 U. S. 158, 175, 23 Sup. Ct. 483, 47 L. Ed. 760, it was said that the vessel and her owners are liable, in case a seaman is wounded in the service of the ship, to the extent of his maintenance and cure, and to his wages at least so long as the voyage is continued. If the term of employment extend beyond the voyage, I think the former must govern. The J. F. Card (D. C.) 43 Fed. 92, 95. Considering that the libelant was hurt in the service of the ship, and received no notice of discharge as provided in the shipping articles, he seems to me entitled to his wages for the term of his shipment, except as affected by the following state of facts: At the time he shipped he was an escaped convict. About a month after the accident, he was recaptured and taken back to the House of Correction, where he served out his sentence during the rest of his term of shipment. The libelee contends that the libelant's whole contract of service was invalid, because a convict cannot dispose of himself, and so that the libelant cannot recover except for service actually rendered. No authorities have been cited on either side, and the case seems to be one of first impression. On the whole, I am not disposed to rule that a seaman is deprived of the rights which ordinarily arise from his employment because he is subject to recapture as an escaped convict. I allow the libelant wages from April 1st to April 30th, the date of his recapture. For wages accruing after the last date it is obvious that there can be no recovery.

About a year after the accident the libelant paid $11 as expense of cure. The libelee contends that the liability for maintenance and cure terminates with the voyage. See The Atlantic, Abb. Adm. 451, Fed. Cas. No. 620; Nevitt v. Clarke, Olc. 316, Fed. Cas. No. 10,138; The J. F. Card, ubi supra. On the other hand, in Reed v. Canfield, 1 Sumn. 195, 203, Fed. Cas. No. 11,641, Mr. Justice Story said:

"It has been asked, if, in a claim of this sort, the expenses of cure are to be paid by the ship, what are the limits of the allowance? May they be extended

over years or for life? My answer to suggestions of this sort is that the law embodies, in its very formulary, the limits of the liability. The seaman is to be cured, at the expense of the ship, of the sickness or injury sustained in the ship's service. But so far, and so far only, as expenses are incurred in the cure, whether they are of a medical or other nature, for diet, lodging, nursing, or other assistance, they are a charge on, and to be borne by, the ship. They (the owners) are liable only for expenses necessarily incurred for the cure; and when the cure is completed—at least, so far as the ordinary medical means extend—the owners are freed from all further liability."

I cannot believe that the liability of the vessel and owners for the cure of an injured seaman is limited absolutely by the termination of the voyage; that, if the seaman is seriously hurt while anchoring the vessel in the harbor of destination, he may be abandoned by the captain without further help. After the remarks of Mr. Justice Story, I do not think that a District Court in the First Circuit should hold this to be the law. A higher court is needed to overrule Reed v. Canfield. Most of his cure the libelant obtained free at a hospital, and this small additional payment was not unreasonable. The payment was at the limit of the cure, "as ordinary medical means extend." With some doubt, I allow it.

Under the circumstances, the libelant can recover no costs.

Decree accordingly.