## MYSTIC TERMINAL CO. v. THIBEAULT et al.

### No. 3514.

Circuit Court of Appeals, First Circuit.

Jan. 18, 1940.

Francis P. Garland and Hurlburt, Jones, Hall & Bickford, all of Boston, Mass., for appellant.

Harry Kisloff, of Boston, Mass., for appellee Thibeault.

Albert T. Gould, Howard F. Fanning, and Bingham, Dana & Gould, all of Boston, Mass., for appellee Boston Towboat Co.

Before WILSON and MAGRUDER, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

This is an appeal from an interlocutory decree in admiralty, determining the rights and liabilities of the parties, taken under authority of U.S.C., Title 28, Section 227, as amended, 28 U.S.C.A. § 227.

The District Court held respondent, The Mystic Terminal Company, liable for injuries sustained by the libellant when he stepped through the roof of a carfloat operated by that company while being taken by a tug, on which he was a mate, to be placed alongside a vessel in Boston Harbor.

The court held that the libellant was in the place where he got hurt by implied invitation of the Terminal Company, which, at the time, was subject to the liability of an owner, and that the accident was due to the failure of the duty of the Company to furnish a reasonably safe place in which to work or to warn the workmen of its insufficiency.

The Terminal Company maintains that the evidence does not warrant a conclusion that the libellant was invited to be upon

the place where the accident occurred and that there was no breach of duty owed a mere licensee.

Unless the court erred in holding that the libellant was an invitee upon the roof of the carfloat its decree should be sustained.

The evidence involved no dispute of any consequence. It appears that the float was a long scow carrying freight cars and had to be moved about the harbor by a tug. There were two tracks on the float running lengthwise of the craft with a capacity of four cars on each track. Between the tracks, also running the length of the float, was a loading-platform covered by a nearly flat wooden roof, of such a height from the deck that it came about on a level with the tops of the freight cars when in position on the float, the roof occupying most of the space between them, a width of about seven feet. The roof was made of 7/8 inch matched boards with battens of the same thickness, amply strong, when sound, to hold a man walking on it.

At the place of the accident the roof was unsafe owing to the rotting of the boards, a condition discoverable on proper inspection by an owner or operator, for lack of which the operator here was properly held liable to the libellant, unless he was a mere licensee when upon the roof. Conley v. Consolidation Coastwise Co., D.C., 242 F. 591. The Illinois, D.C., 63 F. 161. Burrell v. Fleming, 5 Cir., 109 F. 489.

As to the point made by respondent that libellant was a mere licensee, it is clear from the evidence that in handling the loaded carfloat with a towboat it is necessary for a member of the crew of the tug to be on the roofs of the cars and to cross from one line of cars to the other quickly and frequently in the course of navigation, as the tug is necessarily attached to the side of the float in such a way that the helmsman on the tug cannot see over the loaded float nor manage the tow without the assistance of signals from the top of the load.

Unless this narrow roof, on a level with, and practically filling the space between, the tops of the two lines of cars, could be used to pass over from one line of cars to the other, it would be necessary to descend to the deck of the float and cross over and climb up the other line of cars in order to get to a point perhaps seven feet from the starting place; and there might be no time to do that. At times, also, it was difficult to maintain a footing on the tops of the cars, it being customary then to use the more stable roof. The fixed roof of the float appeared to be admirably adapted to the use made of it by the men assisting in the navigation of the two vessels, and to be a practical necessity, unless something else was provided to serve the same purpose. Moreover, the use made of the roof by the libellant at the time of the accident was exactly the same use made in similar situations for many years, a practice known to the Terminal Company and acquiesced in by it.

The contract of towage was oral and consisted of a telephone order to the captain of the tug to take the carfloat from one wharf and place it alongside a vessel at another. As this had been done a great many times by the same parties the contract must be considered to be that the job should be done in the usual and customary way that had been established by previous dealings between the parties. Sun Oil Co. v. Dalzell Towing Co., Inc., 2 Cir., 55 F.2d 63, affirmed 286 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311.

The court properly found that it was the intention of the parties to include within the terms of the contract of towage the well-known, long-time usage of the roof, shown to have existed. It was expected that the float would be handled in the customary way, the details of which were well known to the parties. This involved the use of the roof by the lookout man from the crew of the tug. It is clear that he was there by implied invitation of the operator of the float and was not a mere licensee, in which case, under the circumstances shown, the Terminal Company is liable for the injuries sustained.

Libellant was on the roof for the business purposes comprehended by the invitation, and in view of the long-standing usage, it is immaterial that the roof may not originally have been designed for the use to which it was so naturally adapted. Hupfer v. National Distilling Company, 114 Wis. 279, 90 N.W. 191.

It seems to be admitted that the liability of the towboat company for maintenance and cure will be absorbed by the liability of the Terminal Company if it is held liable for the accident, the towboat company being secondarily liable for main-

tenance and cure. The decree of the District Court fully covered that point.

The decree of the District Court is affirmed, with costs.