## JONES v. WATERMAN S. S. CORPORATION (READING CO., Third Party Defendant).

### Nos. 8930, 8945.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 20, 1945.

Decided May 28, 1946.

Abraham E. Freedman, of Philadelphia, Pa. (Freedman, Landy & Lorry, all of Philadelphia, Pa., on the brief), for appellant David E. Jones.

George M. Brodhead, of Philadelphia, Pa. (Rawle & Henderson and Joseph W. Henderson, all of Philadelphia, Pa., on the brief), for appellant Waterman Steamship Co.

Henry R. Heebner and Wm. Clarke Mason, both of Philadelphia, Pa. (Morgan, Lewis & Bockius, of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, McLAUGHLIN and O'CONNELL, Circuit Judges.

BIGGS, Circuit Judge.

The plaintiff, David E. Jones, a seaman employed by the defendant and third-party plaintiff, Waterman Steamship Corporation, brought suit against his employer in a civil action to recover maintenance and cure and wages. Jones had left his ship, the S.S. "Beauregard", on shore leave and was proceeding across the pier toward the street when all the lights on the pier were extinguished. As a result of the darkness he fell into an open ditch along a railway siding owned and operated by the third-party defendant, Reading Company, and sustained injuries which incapacitated him for some months. Waterman impleaded Reading Company as a third-party defendant for reasons set out hereinafter.

The suit at bar, Civil Action No. 1481 in the District Court, was instituted by Jones on the same day that he brought a civil action against Reading Company in the court below, Civil Action No. 1480, to recover damages for his injuries and expenses in connection therewith. No. 1480 was tried to a jury and a verdict was returned for the plaintiff in the amount of $2,387.50. Thereafter, the court granted a motion made by Reading for a new trial. See Jones v. Reading Company, D.C., 45

McLAUGHLIN, Circuit Judge, dissenting in part.

F.Supp. 566. Jones then settled his case with Reading for the sum of $750 and executed a general release in the latter's favor. The release was in the usual form and released and discharged Reading from all claims and demands whatsoever which Jones had against Reading "by reason of any matter, cause or thing whatsoever * * * and particularly, * * * by reason of injuries and losses sustained as a result of * * *" the fall "to recover for which I brought suit in the U. S. District Court for the Eastern District of Pennsylvania against Reading Company, in Civil Action No. 1480, * * *".

During the pendency of No. 1481 Waterman filed a motion to dismiss the action against it on the ground that a ship owner was not liable for maintenance and cure for an injury occurring on a pier. The motion was granted by the court below but the judgment was reversed by this court. See 3 Cir., 130 F.2d 797. Our decision was affirmed. Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107. After remand Waterman filed an answer setting out the release which Jones had executed to Reading and impleaded Reading asserting that Waterman is entitled to indemnity from Reading for any sum which Jones may recover against Waterman.

The case went to trial. Jones introduced as evidence the testimony received in No. 1480. Other evidence was also received which need not be detailed here. It is enough to state that certain testimony was given by Jones respecting his inability to work following his medical discharge and that shipping articles of the "Beauregard" were introduced in evidence as was the release to Reading. In No. 1480 Jones sought to recover both compensation and consequential damages, the latter including, as the evidence shows, substantially all the items recoverable by Jones as maintenance and cure and wages.

The court below in the instant case concluded that "To permit the plaintiff to successfully prosecute [the action at bar] would be to enable him to obtain two satisfactions for the one injury by resort to two different causes of action." 60 F.Supp. 30, 32. Judgment was entered in favor of Waterman and against Jones. Judgment also was entered in favor of Reading as third-party defendant and against Waterman as third-party plaintiff on the theory enunciated in The Federal No. 2, 2 Cir., 21 F.2d 313. Both Jones and Waterman have appealed at our Nos. 8930 and 8945, respectively.

If a seaman falls sick or is injured and must be removed or is kept from his vessel he is entitled to maintenance and cure as well as to his wages. Smith v. Lykes Brothers-Ripley S.S. Co., 5 Cir., 105 F.2d 604, 605. Wages, even if they include "keep", must be restricted to the term of employment as specified by the shipping articles while the duty to provide maintenance and cure lasts as long as the seaman's need continues. Calmar Steamship Corporation v. Taylor, 303 U.S. 525, 58 S. Ct. 651, 82 L.Ed. 993; Loverich v. Warner Co., 3 Cir., 118 F.2d 690, certiorari denied 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535. Jones has a cause of action against Waterman for maintenance and cure and for his wages as set out in his complaint in the suit at bar. This is an action ex contractu. Jones may maintain it by reason of the obligations and duties imposed on Waterman by the shipping articles and by virtue of his status as a member of the crew of the "Beauregard". Jones also had a cause of action against Reading sounding in tort and arising ex delicto by reason of Reading's alleged failure properly to maintain its right-of-way. Jones was careful to restrict his complaint in the case at bar to a claim for "wages to the end of the articles and maintenance and cure for the period of his disability * * *". He does not seek to recover damages from Waterman.

The distinction between the right to maintenance and cure and wages and the right to damages is made clear by the Supreme Court in Pacific Steamship Co. v. Peterson, 278 U.S. 130, 138, 49 S.Ct. 75, 77, 73 L.Ed. 220, wherein Mr. Justice Sanford stated, "In short, the right to maintenance, cure and wages, implied in law as a contractual obligation arising out of the nature of the employment, is independent of the right to indemnity or compensatory damages for an injury caused by negligence; and these two rights are consistent

and cumulative." See also Aguilar v. Standard Oil Co., supra, 318 U.S. at pages 730, 731, 63 S.Ct. 930, 87 L.Ed. 1107. Jones could not have recovered maintenance and cure and wages from Reading, nor may he recover damages from Waterman. It follows that Waterman and Reading were not joint tortfeasors. In fact, Waterman committed no tort. It is not alleged that it did. Under no theory of law can Jones' release to Reading release Waterman. It is unnecessary therefore to discuss the Pennsylvania law of release of joint tortfeasors or to compare it with the federal law. Cf. Thompson v. Fox, 326 Pa. 209, 192 A. 107, 112 A.L.R. 550 and McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1253.

Jones has settled his cause of action against Reading but he is free to assert and to recover on his ex contractu cause of action against Waterman. He would be free to do this even if he had obtained a judgment against Reading and had executed it. The circumstances are somewhat analogous to those which would be presented if a person insured against personal liability were injured by an automobile driven by an alleged tortfeasor. He has sued the tortfeasor who drove the automobile which hit him and recovered a verdict. This has been set aside and he, thereafter, makes a settlement with the alleged tortfeasor. He then seeks to collect a sum of money which he alleges is due to him under his insurance policy because of his injuries. The insurance carrier says, "You have made a settlement with and have received money from the tortfeasor, the amount of your claim against us has been satisfied by that settlement or at the least your recovery against us must be reduced pro tanto." This contention in substance was dealt with by the court in Dempsey v. Baltimore & O. R. Co., D.C., 219 F. 619 and was refuted. See also Sprinkle v. Davis, 111 F. 2d 925, 128 A.L.R. 1101 and Clune v. Ristine, 10 Cir., 94 F. 745. The position taken by Waterman as to Jones is untenable.

In the suit at No. 1480 there was a certain confusion evinced by counsel for both parties as to the nature of the damages which Jones was entitled to prove and this confusion seems to have been carried over into the suit at bar. As we have indicated at an earlier point in this opinion, a seaman is entitled to wages only to the end of the period of time covered by the shipping articles, whereas he is entitled to maintenance and cure as long as he shall have need of them. Two sets of shipping articles were introduced in evidence. We are concerned with only one, those signed by Jones on January 6, 1941, and which were in effect on January 16, 1941, the day of the accident. It has been stipulated by the parties that these shipping articles were "closed out" on February 5, 1941. But the articles state, inter alia, that the seamen should make one or more voyages on the "Beauregard" as the master might direct "for a term of time not exceeding twenty-four calendar months." We entertain no doubt in the light of such decisions as Mc-Carron v. Dominion Atlantic Railway Company, D.C., 134 F. 762, and Enochasson v. Freeport Sulphur Co., D.C., 7 F.2d 674, that Waterman's obligation to pay Jones' wages endured as long as the period for which he claims maintenance and cure. Since this was the fact the District Court at No. 1480 could not have permitted Jones to recover from Reading damages based upon maintenance and cure and wages. Jones was entitled to recover in the suit at No. 1480 only compensatory damages including an amount to be awarded for pain and suffering. Since Jones was not entitled to recover damages for maintenance and cure and wages in the suit at No. 1480, all other considerations aside, these elements may not be deemed to have been included in the settlement of the suit at No. 1480.

We come now to the final phase of the case at bar. The question presented by it may be summed up as follows: May Waterman recover from Reading any sum which it may be required to pay to Jones for maintenance and cure and wages? In other words, if Waterman pays Jones, is Waterman entitled to indemnity from Reading if it be found that Reading negligently caused Jones' injuries? The third party complaint filed by Waterman does not allege specifically that Reading was negligent or that Jones was injured by reason of Reading's negligence. It does aver,

however, that Reading was in charge of the premises through which Jones walked as an invitee and that when the lights on the pier were extinguished Jones fell into the railroad "ditch" sustaining the injuries which he recites in his complaint. The evidence in No. 1480 was introduced by a stipulation into the case at bar. The court below in the case at bar made no findings of fact or conclusions of law as to Reading's negligence, if any, since it relied on The Federal No. 2, supra. It is suggested by counsel for Jones that this court "as in an action in admiralty" may make findings of fact and conclusions of law. We may not do this. The suit at bar is not in admiralty though Jones' rights against Waterman are governed by the general maritime law. It is a civil suit and is to be conducted in the court below according to the Rules of Civil Procedure. 28 U.S.C.A. following section 723c. Since it was tried to the court[1] and not to a jury, findings of fact and conclusions of law must be made by the court below as required by Rule 52. For the purpose of expediting the cause we will assume, arguendo, that Jones' injuries were caused by Reading's negligence and will endeavor to state the applicable principles of law governing the third-party action.

■ Whether Waterman may maintain its action against Reading in the present suit depends in part on whether the cause of action set out in the third-party complaint can be fitted into the frame of Rule 14(a). The answer to this question turns in large part on the construction of the word "claim" as used in the rule.[2] We think it would be difficult to employ a more inclusive term, and, as is stated in Moore's Federal Practice, Vol. 1, at p. 742, "* * * it is reasonably certain that Federal Rule 14 sought the same general objectives as * * * Admiralty Rule [56]." Admiralty Rule 56, 28 U.S.C.A. following section 723, is very broad and, if the suit at bar were in admiralty, would permit the defendant to maintain the third-party complaint under the assumption of proof which we have made. Moore states also at p. 740, that "The general purpose of Rule 14 is to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third-party defendant." If Waterman will have a claim which it can assert against Reading because compelled to pay Jones money which, absent Reading's negligence in relation to Jones, it would not have to pay, Waterman may assert that claim in the suit at bar by way of its third-party complaint.

■ The primary question therefore is whether or not Waterman has a cause of action which it can assert against Reading if Waterman is compelled to pay Jones. We think that Waterman has such a cause of action if it can prove that Reading's negligence was the cause of Jones' injuries. If Waterman can recover from Reading it can do so because a cause of action arises under the law of Pennsylvania where the operative facts occurred.[3 and 4] No Pennsylvania case in point has been cited to us

---

[1] While there was no express waiver of jury trial, the original plaintiff having requested trial by jury on April 17, 1941, as provided by Rule 38(b) and the third party plaintiff having made no such request, it is apparent from the transcript of the proceedings in the court below on June 5, 1944, the day of the trial, that all the parties waived all rights to trial by jury.

[2] See that portion of Rule 14(a) which provides that a defendant may "serve a summons and complaint upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him."

[3] The dividing line between Admiralty and the common law is set out in Sec. 128 and 128a of Benedict on Admiralty, Knauth's 6th Ed. Contrast the English and American Rules. See the authorities cited to Knauth's text. Under the decisions of the American courts there is no doubt that Waterman's cause of action does not lie within the purview of the maritime law.

[4] It will be observed that the third-party complaint alleges diversity of citizenship and jurisdictional amount and that the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. must be applied.

and we can find none. The right is one of an employer to recover indemnity for sums of money which he has been compelled to pay to a servant who has been injured by the tortious act of another. This is not the right of an employer to recover against a tortfeasor for an act which has deprived him of the services of a servant but resembles the latter. It is desirable to state some of the precedents of the general law to the end that our reasons for allowing recovery to Waterman under the assumptions hereinbefore stated may be made plain.

At common law an employer could maintain an action against a tortfeasor to recover damages on account of loss of services which he sustained by reason of an injury to his employee.[5] This cause of action included damages measured by the loss of the employee's services. See 35 American Jurisprudence, Master and Servant, § 530, and the authorities cited therein, and 18 R.C.L., 542, § 58. As to servants infra moenia, some cases held that the master could recover only his out-of-pocket expense due to being deprived of the services. This rule of law persisted to a rather late date in New York. See Tidd v. Skinner, 225 N.Y. 422, 122 N.E. 247, 3 A.L.R. 1145. These rights in substance were those of indemnification. Some of the early cases permitted indemnification against an intentional tortfeasor and denied it as to a merely negligent tortfeasor. The Supreme Judicial Court of Massachusetts did not make such a distinction in Ames v. Union Railway, 1875, 117 Mass. 541, 19 Am.Rep. 426, but permitted a master to recover for the loss of apprentice's services, the latter having been injured due to negligent operation of the railway. See Coal Land Development Co. v. Chidister, 86 W.Va. 561, 103 S.E. 923. The American courts seem to have made no distinction between loss of services caused by intentional wrongdoing, such as assault and battery, and those in which the loss of services resulted from mere negligence. See Voss v. Howard, Fed.Cas. No. 17,013. The case of Cain v. Vollmer, 19 Idaho 163, 112 P. 686, 32 L.R.A. N.S., 38, seems typical. In this case a jockey was injured by a dog, negligently permitted to wander at large by its master. The employer of the jockey sued to recover the value of the prizes which the jockey might have won had he been able to ride. The damages, however, were held to be too speculative to permit recovery. The Supreme Court of Idaho, however, clearly found that a cause of action existed. Compare Fluker v. Georgia Railroad & Banking Co., 81 Ga. 461, 8 S.E. 529, 2 L.R.A. 843, 12 Am.St.Rep. 328.

A case which denies the master's right to recovery is Chelsea Moving & Trucking Co. v. Ross Towboat Co., 280 Mass. 282, 182 N.E. 477. The Supreme Judicial Court of Massachusetts distinguished Ames v. Union Railway, supra, on the ground that the employee in the Ames case was an apprentice and the relationship between master and apprentice was different from that of an ordinary employer and employee, which was purely contractual. The Chelsea Moving & Trucking Co. case is the only decision among the early cases which we have found (though doubtless there are others in the deeps of the law) which holds that an employer cannot recover indemnity for the loss of his employee's services, whether the loss was caused by intentional wrongdoing or negligence. The English law may have gone off in the direction of permitting recovery only if there had been intentional tortious interference with the employer and employee relationship. Lumley v. Gye, 2 El. & Bl. 216, may be said to look in that direction. But the general law in the United States upon this subject seems settled.[6]

---

5 The action by husband or parent for loss of services of wife or child is closely analogous. See the Restatement, Torts, Section 703. It will be noted that the husband or parent is entitled to recover reasonable expenses incurred in treating the illness or injury. See h. Damages, under Section 703 of the Restatement. The recovery of such items may be had because the husband or parent is himself legally liable for them.

6 It is stated as follows in 39 C.J., Master and Servant, § 1604, "A master may maintain an action for all injuries to his servants because of the negligent or wilful acts of third persons which result in damage to the master through loss of services; and the rule has been

■ This is not to say, however, that the employer or master may necessarily recover the sums expended by him out of his own pocket to cure the servant or employee or to maintain him during the illness resulting from an accident. It would seem to follow, however, as a matter of logic that if the master by virtue of his contract of employment with the servant is compelled to maintain and cure his servant during the latter's illness the master should be permitted to recover these sums from the wrongdoer as part of the remedy afforded him in his cause of action against the wrongdoer.[7] There are a number of cases arising under the general maritime law where such recovery or indemnification was permitted. In Mystic Terminal Co. v. Thibeault, 1 Cir., 108 F.2d 813, the operator of a car float towed by a tug was held liable for injuries sustained by the mate of the tug when he stepped through the rotted roof of the car float. It was held that the mate was on the roof for a business purpose and that it was the intention of the parties to include within the contract of towage and implied warranty of a safe place to work. In New York & Porto Rico S.S. Co. of New York v. Lee's Lighters, D.C.E.D.N.Y., 48 F.2d 372, the court held that the steamship company was entitled to indemnity for money paid by it in satisfaction of a judgment obtained against it, plus expenses, arising out of an injury to a stevedore, employed by the steamship company, the accident arising out of the unseaworthiness of a lighter operated by the lighterage company. It was held that there was an implied warranty of seaworthiness in the lighter under the lighterage contract. This case should be viewed in the light of the recent decision of the Supreme Court in Seas Shipping Co., Inc., v. Sieracki, 66 S. Ct. 872. In The No. 34, 2 Cir., 25 F.2d 602, a stevedoring company whose employee was injured by a defective ladder fastened to the side of a lighter and who had re-covered a judgment against his employer in the state court, was held to be entitled to indemnification from the owner of the lighter. Again, it was ruled that there was an implied warranty of a safe place to work as an incident of the stevedoring contract. See also The Lewis Luckenbach, 2 Cir., 207 F. 66. In this case a stevedore had been injured due to a defect in the ship's machinery. The stevedore sued the owner and the charterer and settled with both. The charterer sued the owner for indemnity and recovered. See also Rederii v. Jarka Corporation, D.C.S.D.Me., 26 F. Supp. 304. In this case an employee of a stevedoring company was injured in the hull of a vessel under circumstances possibly entitling him to compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. He sued the vessel and made a compromise settlement. The owner of the vessel brought a libel in personam against the stevedoring company for indemnity. It was held that the owner of the vessel had a cause of action. The Federal No. 2, supra, is the only decision which we have been able to find which militates against this view. We will discuss that decision at a later point in this opinion.

■ If the principles of the majority of the decisions cited in the foregoing paragraph are sound it would follow that indemnity or recovery over may be had against a pier owner, or one holding under him, by a ship for sums expended by it for the maintenance and cure of one of its seamen injured because the pier was not maintained in a condition fit for the business purpose for which it was intended. The duty to maintain the pier, or a railroad track running upon it, in a safe condition for the benefit of seamen leaving a ship moored to the pier is a warranty implicit in the contract between the pier owner and the ship and in the contract or arrangement between the pier owner and the railroad

applied where loss of services resulted from an assault and battery upon the servant, or by reason of his false imprisonment, from the negligent shooting of the servant, or from negligently driving or transporting him, or from his being bitten by defendant's dog." See the authorities cited to the text, some of which have been referred to in this opinion.

[7] The fact that a husband or father, suing for loss of services of wife or child, may recover for medical expenses supplies a helpful analogy. See note 5 supra.

whose tracks run upon the pier. But putting this tortious spelling out of contractual obligations and implied warranties aside, it is clear that Reading had a duty so to maintain its tracks on the pier that a seaman leaving the "Beauregard" would not be injured if he exercised due care. Under this concept Reading's obligation sounds in tort and not in contract but is none the less binding upon it for that reason. Chief Justice Holmes took this position in Boston Woven Hose & Rubber Co. v. Kendall, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781, 86 Am.St.Rep. 478, declaring that although the cause of action of the injured employee against the third party sounded in tort and the obligations and duties of the employer and the employee sounded in contract, the right of the employer to indemnity against the tortfeasor who had injured the employee was not impaired.

We come finally to such Pennsylvania cases as there are. There is no doubt that under the Pennsylvania law an employer has a right to recover against a tortfeasor for an act deliberately intended to deprive him of the services of his servant. Such a right was recognized by the early Pennsylvania decisions dealing with labor relations.[8] We believe that the law of Pennsylvania follows the general law and will permit the employer to recover from a negligent tortfeasor for the value of the services of his injured employee, though we can find no decision directly in point upon this question. It is the law of Pennsylvania that property owners may recover indemnity from persons whose primary negligence has caused them to pay damages to injured persons. See Orth v. Consumers' Gas Co., 280 Pa. 118, 124 A. 296, and Wise Shoes, Inc., v. Blatt, 107 Pa. Super. 473, 164 A. 89. Here the duty imposed upon the corporations primarily liable sounds in tort and grows directly out of the failure to maintain premises properly. The Pennsylvania labor relations cases and the two decisions last cited throw some light on the problem of law presented. Moreover, it must be borne in mind that the obligation of Waterman in the instant case grows out of the maritime law. Waterman cannot escape the burden of Jones' maintenance and cure and it could not escape the loss of his services. Each element of the loss rose out of Reading's tort, assuming Reading to have been negligent. We think that under these circumstances the law of Pennsylvania will permit Waterman to recover not only for the loss of Jones' services but for the sums which it will be compelled to expend for his maintenance and cure.

In so holding we are not unmindful of the decision of the Circuit Court of Appeals for the Second Circuit in The Federal No. 2 which held to the contrary under circumstances analogous to those at bar. The substance of that Court's ruling appears in 21 F.2d at page 314, where, after reference to a "social condition" which permits a father to recover for the loss of the services of a child or a husband for those of his wife, states, "But this social condition does not exist in the relationship of a seaman and his employer. It is a contract obligation, which [the employer] must perform, that imposes this responsibility, even though it be a special damage he suffers from a tortious act. The cause of the responsibility is the contract; the tort is the remote occasion." In Seas Shipping Co., Inc. v. Sieracki, Mr. Justice Rutledge makes it plain that the obligations of the ship to its seamen do not rest solely in contract; that a seaman is in effect a ward of the admiralty and that the relationship between owner and seaman, master and seaman, and ship and seaman is in essence a "consensual relationship". We are of the opinion that the relationship of the ship owner to the seaman is more closely analogous to that of father and child than to that of an employer to a mere employee.

8 See O'Neil v. Behanna, 182 Pa. 236, 37 A. 843, 38 L.R.A. 382, 61 Am.St.Rep. 702; Jefferson & Indiana Coal Co. v. Marks, 287 Pa. 171, 134 A. 430, 47 A. L.R. 745; Flaccus v. Smith, 199 Pa. 128, 48 A. 894, 54 L.R.A. 640, 85 Am. St.Rep. 779; Kraemer Hosiery Co. v. American Federation of Full Fashioned Hosiery Workers, 305 Pa. 206, 157 A. 588. Cf. Tugboat Indian Co. v. A/S Ivarans Rederi, 334 Pa. 15, 5 A.2d 153, cited by Reading.

As to the general common law on this subject see 18 R.C.L. p. 542, § 58, and the authority cited to the text.

We prefer to impose a higher degree of dignity upon the ship-seaman relationship, awarding to it a status or a "social condition" in excess of that given under the ruling in The Federal No. 2. Compare Crab Orchard Imp. Co. v. Chesapeake & O. R. Co., 4 Cir., 115 F.2d 277, 282, 283, where an employer was not permitted to recover indemnity against the tortfeasor who had injured his employee. It should be pointed out that in the cited case the relationship was merely that of employer and employee.

The status of the ship to its seaman bears comparison to that of a soldier in the United States Army to the United States. In United States v. Standard Oil Co., D.C. S.D.Cal., 60 F.Supp. 807, the United States sued the Standard Oil Company for indemnity for the money expended by it to cure an enlisted man of the United States Army who had been struck by the defendant's truck and for the soldier's wages during the period of his incapacity. The court permitted the recovery of both items. While the status of an enlisted man in the armed forces of the United States may be described as statutory and the obligation of the ship to grant maintenance and cure to the injured seaman arises under the admiralty law as embodied in decisions, the principle of liability so clearly enunciated in the cited case should be applicable under the facts of the case at bar. While the courts of the Commonwealth of Pennsylvania have not applied the maxim "Ubi jus, ibi remedium", they have been apt in indemnifying injured employers and we conclude that it is no very great innovation to permit Waterman to recover from Reading for maintenance and cure to be paid by it to Jones, if Reading's negligence is found to be the cause of Jones' injuries.

It is clear that the release executed by Jones to Reading will not avail Reading in the third-party action for the right of Waterman against Reading is not a derivative right through Jones but is a separate and distinct cause of action which will vest in Waterman when it is ascertained what sum of money is due from Waterman to Jones. Cf. United States v. Standard Oil Co., supra.

The judgment against Jones and in favor of Waterman will be reversed. The judgment in favor of Reading and against Waterman will be reversed. The cause will be remanded with the direction to proceed in accordance with this opinion.

McLAUGHLIN, Circuit Judge (dissenting).

I agree with the majority that Jones has a right ex contractu against the Waterman company for wages, maintenance and cure. I dissent from the finding that the Waterman company in its turn can recoup such payments from the tort-feasor railroad.

Crab Orchard Imp. Co. v. Chesapeake & O. R. Co., 4 Cir., 115 F.2d 277, presented quite similar facts. There the Court in an exhaustive opinion determined that the employer had no claim against the third party tort-feasor. The principles of both indemnity and subrogation were held inapplicable because the tort-feasor was not benefited by the employer's payments and because of the vast difference between the duties and liabilities of the employer and those of the tort-feasor. There is no more factual basis here for indemnification or subrogation than appeared in that matter.

The Pennsylvania cases cited in the majority opinion as holding "that property owners may recover indemnity from persons whose primary negligence has caused them to pay damages to injured persons" do not assume to govern an action founded on a contract status. Other Pennsylvania decisions may indicate a liberal trend in dealing with injuries to employees but afford very slim ground on which to predicate the Court's opinion on the instant problem. The Pennsylvania workmen's compensation law allows an employer's subrogation action against a third party tort-feasor, 77 P.S. § 621. The statutory basis of such right thrusts a new and contrary rule into the common law (Williston on Contracts, Revised Edition, § 1028A) but that doctrine is confined to workmen's compensation. I do not think that the common law rule of indemnification to an employer extends beyond payments by him to his servants and such class of persons or that the majority view to the contrary can

be fairly said to represent the present Pennsylvania law.

The majority further asserts that indemnity is indicated because of the maritime contract between Jones and the Waterman company with that relationship controlling between Waterman and the railroad. Under such pronouncement there is created generally a greater responsibility to a sailor than to a landsman which would exist in favor of a ship operator simply because of his special liability to his seamen. No valid reason is advanced for such radical extension of the underlying maritime theory. Lastly the Court opinion states that the logic of the law suggests the allowed indemnity. Even if this were to be assumed, arrival at such logical result necessitates holding the defendant under a liability which did not attach to it at the time of the occurrence. The logic involved might be for consideration of the Pennsylvania Legislature in establishing the same type of statutory indemnification against a third party tort-feasor as that body has already fixed in workmen's compensation, but the question is not properly before us on this appeal.