**Leonard GAUTHIER, Plaintiff,**

**v.**

**CROSBY MARINE SERVICE, INC., Dixie Oil Tools, Inc., L. Griffin, Inc., Defendants.**

**Civ. A. No. 79–2366.**

United States District Court, E.D. Louisiana.

April 4, 1983.

A. Gordon Grant, Jr., New Orleans, La., for plaintiff.

Rene A. Pastorek, Thomas L. Gaudry, Jr., Daniel A. Ranson, Gritna, La., for defendant Dixie Oil Tools, Inc.

Michael L. McAlpine, John Peuler, New Orleans, La., for defendant Crosby Marine Service, Inc.

Robert M. Contois, Jr., Grady S. Hurley, New Orleans, La., for defendant L. Griffin, Inc.

## MEMORANDUM OPINION ON CLAIM FOR INDEMNITY FOR MAINTENANCE AND CURE PAYMENTS

CASSIBRY, District Judge:

The Jones Act employers of the plaintiff Leonard Gauthier, Crosby Marine Service, Inc., and L. Griffin, Inc., seek indemnity from Dixie Oil Tools, Inc., for the amounts they were ordered to pay the plaintiff for maintenance and cure. The plaintiff Leonard Gauthier commenced this personal injury suit against Crosby Marine Service, Inc. [Crosby] for negligence under the Jones Act and for unseaworthiness and maintenance and cure under the general maritime law, and against Dixie Oil Tools, Inc. [Dixie] and other defendants under the general maritime law. Crosby cross-claimed against Dixie seeking contribution and indemnity, and filed a third-party demand against L. Griffin, Inc. [Griffin] for the same relief. Griffin filed a demand seeking indemnity from Dixie.

---

Plaintiff Leonard Gauthier, the Captain of the M/V Ricky III, owned by Crosby, suffered a groin injury on July 3, 1978 while loading onto the Ricky III oil tools which had been offloaded by Dixie on the land area adjacent to the water's edge at Port Sulphur, Louisiana. Crosby was hired by a third company to transport the tools to a workover rig. Plaintiff was treated for his injury and discharged as fit for duty. After his return to work Crosby fired him for reasons not shown to be related to his physical condition. Thereafter he worked for Griffin on its M/V Dwayne G. a short time when the groin symptoms recurred. The plaintiff was hospitalized and did not reach maximum cure until July 9, 1979.

Because no maritime claim could be asserted against Dixie since the acts of negligence alleged against it occurred on land, and diversity of citizenship was lacking, Dixie was dismissed as a defendant without opposition. It was retained in the case as a third party defendant in the claims of Crosby and Griffin against it on the basis of ancillary jurisdiction.

The maintenance and cure claim of plaintiff was severed, and after trial judgment was rendered ordering Crosby and its insurer to pay maintenance and cure to the plaintiff in the amount of $3,645.72, with interest, and ordering Griffin to pay $4,789.95, with interest. Judgment was also rendered against Crosby and Griffin in solido in the amount of $10,688.52, with interest and costs of the severed claim, and in favor of Crosby and its insurer against Griffin in the amount of $3,882.25, with interest.

The subsequent trial of the plaintiff's claims remaining after the maintenance and cure trial resulted in a verdict finding that Crosby was not negligent, that the M/V Ricky III was seaworthy, and that the plaintiff's injury was caused by his own negligence and Dixie's in the proportion of 50 percent for each. The third-party claims of Crosby and Griffin against Dixie were not submitted to the jury, but were reserved for decision by the court after trial of the negligence and unseaworthiness claims. The sums which Crosby and Griffin were ordered to pay the plaintiff as maintenance and cure are the sums which they now seek to recover from Dixie. These claims were submitted on the record and memoranda of the parties.

The parties have submitted the claim for indemnity under the simplistic approach that, if the claim is maritime, the contributory negligence of Gauthier will not prevent Crosby's and Griffin's recovery, but, if the claim is one under state law, Gauthier's contributory negligence will prevent their recovery. A careful study of the indemnity issue indicates that the matter is not so simple, and compels the conclusion that indemnity is not recoverable under the circumstances of this case regardless of whether or not the claim is maritime.

Crosby and Griffin claim that, as the innocent Jones Act employers of Gauthier, they are entitled to be indemnified by the negligent third party Dixie for the sums which they have been compelled to pay as maintenance and cure. They rely on *Savoie v. La Fourche Boat Rentals, Inc.*, 627 F.2d 722 (5th Cir.1980); *Adams v. Texaco, Inc.*, 640 F.2d 618 (5th Cir.1981); *Richardson v. St. Charles-St. John the Baptist Bridge and Ferry Authority*, 284 F.Supp. 709 (E.D.La.1968). Dixie resists their claim under the authority of *Jones v. Waterman S.S. Corporation*, 155 F.2d 992 (3d Cir. 1946). It contends that here, as in *Jones,* the operative facts occurred on land within a state so that state law controls, rather than the federal law applied in the cases relied on by Crosby and Griffin, and Louisiana law will not allow an employer to recover indemnity from a negligent third party where the injured employee is guilty of contributory negligence.

Dixie urges that the approach in *Jones* is appropriate here to find an analogous action under state law, and it suggests that the claims of Crosby and Griffin are most

analogous to the claim of an employer against a third party for the compensation benefits paid to an injured employee. Dixie points out that Louisiana law is clear that the employer may only recover the compensation benefits paid to the employee for injuries received by the negligent acts of a third party if the employee is free from negligence. *LaLande v. Index Geophysical Survey*, 336 So.2d 1054 (La.App. 3d Cir.1976).

Crosby attempts to weaken *Jones* as authority by charging that the Third Circuit Court of Appeals assumed, without any discussion, that the state law applies when the seaman is injured on land within a state. Crosby also considers that there appears to be a divergence of authority on the issue, citing *Richardson v. St. Charles-St. John the Baptist Bridge and Ferry Authority, supra*, at p. 714, n. 7; *United States v. The Manzanillo*, 190 F.Supp. 229 (D.Ore.1960); rev'd on other grounds, 310 F.2d 220 (9th Cir.1962); Gilmore and Black, The Law of Admiralty (2d ed. 1972), pp 319–320, and urges the court not to follow *Jones*.

The employee in *Jones* was injured on land in a dock area within the State of Pennsylvania. The court first decided that, because the operative facts occurred in Pennsylvania, the employer's indemnity claim did not lie within the purview of the maritime law, but rather the common law.[1] This decision was made on the assumption that the same rules defining the dividing line between admiralty and common law torts would apply to determine the nature of the indemnity action—whether admiralty or common law.

The state law of Pennsylvania was first examined for a cause of action because the third-party complaint for recovery of indemnity alleged diversity jurisdiction.[2] This basis for applying the law of Louisians does not exist here. There is no diversity of citizenship in the third-party complaint.[3]

Two holdings in *Jones* are relevant to the indemnity issue here. It held that a cause of action exists at common law for a Jones Act employer to recover from a third-party tort feasor the sums paid an injured seaman for maintenance and cure, and that the claim is one under the common law and not in admiralty when the operative facts occur on land within a state. The attempt of Crosby to create a divergence of authority on the nature of the action when those circumstances exist fails. No case involving those circumstances has departed from the holding in Jones. In the cases relied on by Crosby the operative facts occurred on vessels. The superficial analysis of Gilmore and Black that "The indemnity action seems closely enough related [to the maintenance and cure action] to be equally considered as maritime ..." is not persuasive. Gilmore and Black, supra. The indemnity claims here are common law, not maritime.

---

1. This is made clear by footnote 3 which follows this statement:

   If Waterman [employer] can recover from Reading [third party] it can do so because a cause of action arises under the law of Pennsylvania where the operative facts occurred. Footnote 3 reads:

   The dividing line between Admiralty and the common law is set out in Sec. 128 and 128a of Benedict on Admiralty, Knauth's 6th Ed. Contrast the English and American Rules. See the authorities cited to Knauth's text. Under the decisions of the American courts there is no doubt that Waterman's cause of action does not lie within the purview of the maritime law. [The Benedict on Admiralty reference is to the section titled "Torts-Dividing Line Between Admiralty and Common Law."]

2. Footnote 4 of the *Jones* opinion also followed the statement quoted in footnote 1, supra. In other words, the statement was followed by a double footnote. Footnote 4 explained:

   It will be observed that the third-party complaint alleges diversity of citizenship and jurisdictional amount and that the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 must be applied.

3. Crosby conceded in Dixie's previous motion for dismissal of the third-party complaint for lack of jurisdiction that no independent basis for jurisdiction existed as to the third-party claim, and successfully urged the court to maintain the claim under the court's ancillary jurisdiction.

The common law action for indemnity recognized in *Jones* and the indemnity action recognized in *Savoie v. LaFourche Boat Rentals, Inc.*, wherein the operative facts occurred on a vessel, are both based on principles of equity and justice. Justice requires that a person free from fault who is exposed to liability because of the tortious act of another be indemnified by the tortfeasor. Such a cause of action has long been recognized in Louisiana.[4] *Appalachian Corporation v. Brooklyn Cooperage Company*, 151 La. 41, 42, 91 So. 539 (1922). The basis of the right to indemnity was couched in terms of "commonsense" in *Savoie*. "Indemnification of the innocent employer is based on the commonsense principle that a party whose neglect has caused or contributed to the need for maintenance and cure payments should reimburse the cost of those payments..." *Savoie*, supra, at p. 723.

The circumstances of this case cast in doubt the equity, justice or "commonsense" of permitting the employers to recover indemnity from Dixie. Crosby and Griffin emphasize that they are employers innocent of negligence, and that Dixie was guilty of negligence which contributed to Gauthier's injury. On the other hand, Dixie in spite of its negligence cannot be regarded as a tortfeasor. Because the injury occurred on land, Gauthier had a cause of action against Dixie only under Louisiana law, and under that law Gauthier's contributory negligence is a complete bar to his recovery.[5]

Equity, justice and commonsense are not being served by compelling a third party to indemnify an employer when no recovery may be had against the third party by the victim himself. Certainly all considerations of unjust enrichment disappear when the third party has no liability to the injured employee. It is impossible to justify on equitable grounds recovery by a person secondarily affected by a third party's negligence when the victim himself may not recover.

These considerations are valid regardless of whether the indemnity action is regarded as one under the maritime or one under the common law. Under any theory of indemnity the employer should not be allowed to recover against the third party, if the employee cannot recover against him. In the federal cases relied on by Crosby and Griffin, heretofore cited, in which the contributory negligence of the employee was held not to prevent recovery of indemnity by the employer against the negligent third party, the recovery of the employee against the third party would not have been prevented by the employee's contributory negligence because in those cases the doctrine of contributory negligence was applicable. No federal case has been cited in which recovery of indemnity by the employer was allowed where contributory negligence of the employee would have prevented recovery against the third party.

4. Even if this were a diversity case and Louisiana law would control, the Louisiana Workmen's Compensation Law would not be analogous. The right of the employer to recover indemnity from the tortfeasor for sums paid an employee in compensation is granted by statute on principles of subrogation. See Malone, Louisiana Workmen's Compensation Law and Practice (1951) § 367, p. 474. *Jones* decided that the common law action for indemnity is not a derivative action, but an independent one. Malone considers that the indemnity action recognized in *Appalachian* is independent, not derivative.

5. Until 1979 the doctrine of comparative negligence was not recognized in Louisiana. La.C.C. 2323, as amended.